NOW, et al., Plaintiffs,

v.

OPERATION RESCUE,
et al., Defendants.

Civ. A. No. 89–2968–LFO.

United States District Court,
District of Columbia.

March 16, 1993.

As Corrected March 29, 1993.

Colby M. May, Richard L. Swick, Washington, DC, Jay Alan Sekulow, James M. Henderson, Atlanta, GA, for Operation Rescue.

Laurence Jay Eisenstein, Steven Semeraro, Laura M. Steeves, Rene I. Augustine, Covington & Burling, Washington, DC, for NOW.

## MEMORANDUM

OBERDORFER, District Judge.

Defendants have appeared before the Court at two hearings to show cause why they should not be cited in contempt for violating the Court's July 31, 1990 Revised Permanent Injunction. The first hearing was held on January 24, 1992, and the second hearing on October 26, 1992. An Order filed January 28, 1993, brought the parties before the Court again on February 16, 1993, to

address the pending contempt motions and four additional questions, namely (1) whether the exercise of pendent jurisdiction is appropriate in light of the decision of a divided Supreme Court in *Bray v. Alexandria Women's Health Clinic,* —— U.S. ——, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993); (2) whether the Court has jurisdiction to act on alleged violations of the Injunction while appeal of that Order is pending; [1] (3) if so, what remedies are available under the Injunction; and (4) whether the United States should be invited to participate in the case. This Memorandum records findings of fact and conclusions of law concerning the evidence and legal principles addressed at those hearings and the entire record.

## I. Jurisdiction After *Bray* Decision

■ The Revised Permanent Injunction for which enforcement is sought here enjoined violations of plaintiffs' federal civil rights under 42 U.S.C. § 1985(3); violations of rights under District of Columbia trespass law, D.C.Code § 22–3102; and violations of District of Columbia public nuisance law, *see B & W Management, Inc. v. Tasea Investment Co.,* 451 A.2d 879, 881 (D.C.1982). *NOW v. Operation Rescue,* 747 F.Supp. 760, 767–78 (D.D.C.1990). The Supreme Court holding in *Bray, supra,* that section 1985(3) does not create a cause of action against persons blocking access to abortion clinics invalidates the section 1985(3) ground for the Injunction. Defendants argue that the *Bray* decision ousts this Court's jurisdiction over the entire case. However, the principle of pendent jurisdiction preserves the Court's continued jurisdiction over the injunction against D.C. law violations and sustains the Court's power and duty to enforce its orders.

As the *Bray* court put it:

[Petitioners] contend that respondents' § 1985(3) claims were so insubstantial that the District Court lacked subject-matter jurisdiction over the action, including the pendent state claims; and that the injunction should therefore be vacated and the entire action dismissed. We do not agree. While respondents' § 1985(3) causes of ac-

tion fail, they were not, prior to our deciding of this case, "wholly insubstantial and frivolous," [citations] so as to deprive the District Court of jurisdiction.

It may be, of course, that even though the District Court had jurisdiction over the state-law claims, judgment on those claims alone cannot support the injunction that was entered. We leave that question for consideration on remand.

—— U.S. at ——, 113 S.Ct. at 768. So here, at the time the defendants allegedly violated the relevant orders entered, the federal element of jurisdiction was substantial and serious, supported by, among others, the decision of the Court of Appeals only recently reversed by the divided *Bray* court. *See NOW v. Operation Rescue,* 914 F.2d 582, 585 (4th Cir.1990). Accordingly, the only remaining jurisdictional question is whether the claims under District of Columbia law support the Injunction entered.

The November 1989 Memorandum explained the original Injunction against defendants' clinic-blocking actions as follows:

It is likely, though not yet certain, that plaintiffs' constitutional claims will lie. However, the preliminary relief sought by plaintiffs can be afforded on the basis of the state claims without reliance upon the constitutional ones.

.  .  .  .  .

Such blockading of plaintiffs' premises would violate District of Columbia laws proscribing trespassing (D.C.Code § 22–3102) and public nuisances (*see B & W Management Inc. v. Tasea Investment Co.,* 451 A.2d 879, 881–82 (D.C.App.1982)), as well as tortiously interfere with plaintiffs' professional and business relations. *See Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan,* 374 A.2d 284, 288 (D.C.App.1977).

*NOW v. Operation Rescue,* 726 F.Supp. 300, 304 (D.D.C.1989). The District law claims therefore provide a sufficient basis for retaining federal jurisdiction, enforcing the Injunction, protecting the previously established

---

1. Notice of appeal from the Revised Permanent Injunction and other Orders was filed on October 15, 1990, and the appeal is pending in our Court of Appeals. There is no indication that any brief-

ing or argument of that appeal is pending or that decision is otherwise imminent. Previous experience suggests that the defendants' activities in Washington occur in the spring of each year.

rights of plaintiffs, and vindicating the vital authority of a United States District Court. The findings of fact and conclusions of law set forth below substantiate this conclusion.

## II.  Findings of Fact

The evidence adduced at the hearings on January 24, 1992 and on October 26, 1992, and incorporating the Findings of Fact made in the July 31, 1990 and the January 16, 1992 Memoranda and Court Orders, lead to the following Findings of Fact:

### A.  The January 24, 1992 Hearing

1.  A January 16, 1992 Order required defendants Clifford Gannett and Operation Rescue, as well as Keith Tucci and Keith Tucci doing business as "Operation Rescue National," to appear before the Court to show cause why each of them should not be cited for contempt for violating and inducing others to violate the July 31, 1990 Revised Permanent Injunction in the above matter. The hearing set by that Order was held on January 24, 1992.  Clifford Gannett appeared and represented himself; Operation Rescue appeared through counsel.  Neither Keith Tucci nor Operation Rescue National appeared.

2.  Operation Rescue is an unincorporated entity and is a named defendant in *NOW v. Operation Rescue, et al.*, 89–2968.

3.  Operation Rescue National is an unincorporated entity, frequently used as a trade name by Keith Tucci, with its principal place of business, like his, at P.O. Box 127, Summerville, SC 29484.

4.  Keith Tucci had actual notice of the Court's Revised Permanent Injunction.  January 16, 1992 Order at 2–3.

5.  Plaintiffs caused a copy of the Revised Permanent Injunction to be sent to Tucci by registered mail, return receipt requested, to the address that appears prominently on the fund solicitation letter signed by Keith Tucci as Director, Operation Rescue National. The address to which the Order was sent was P.O. Box 127, Summerville, SC 29484.

6.  Keith Tucci had actual notice of the January 16, 1992 Court Order requiring him to appear on January 24, 1992 in order to show cause why he should not be held in contempt.  The Order of January 16, 1992

required defendants Clifford Gannett and Operation Rescue to "cause a copy of the . . . Injunction and a copy of this Order to be delivered by hand to, and by whatever means, also fully inform Keith Tucci, and Keith Tucci d/b/a Operation Rescue National . . . of the Injunction and this Order." January 16, 1992 Order at 3.

7.  Plaintiffs also served Keith Tucci with a subpoena ordering his appearance at the January 24, 1992 hearing.  Tr. 4–5; Pl.Ex. 10.

8.  Keith Tucci circulated a letter dated December 3, 1991 on Operation Rescue National stationery to individuals who had purchased merchandise from Operation Rescue and asked to have their names placed on a mailing list.  Pl.Ex. 1; Hudson, Tr. 15–16. Keith Tucci signed the letter "Director, Operation Rescue National."  Pl.Ex. 1, at 4. This letter announced the "Capital Project's," three days of activities in Washington, D.C. that would include so-called "rescues" similar to those that were attempted or conducted in Wichita, Kansas in the summer of 1991.  *Id.* The letter also urged individuals to come to Washington to participate.  Pl.Ex. 1 at 4.

9.  Keith Tucci's letter of December 3, 1991, was accompanied by a brochure announcing that the Capital Project activities would occur on January 20–22, 1992.  Pl.Exs. 3 & 4; Hudson, Tr. 29.  This brochure urged individuals to register for the Project by sending $10.00 to Operation Rescue National at P.O. Box 127, Summerville, S.C. 29484.  It also identified a hotel in Arlington, Virginia where individuals participating in the Capital Project would receive a special rate.  A section of the brochure headed "Rules For The On-site Participant" indicated that participants could expect to be arrested.  Pl.Exs. 3 & 4.

10.  A December 13, 1991 letter, on Project Rescue stationary and signed by Clifford Gannett, provided information concerning the Capital Project and urged individuals to participate in the activities.  Pl.Ex. 2.  Mr. Gannett declared in the letter that he was writing "at the request of Keith Tucci, Director of Operation Rescue–National."  Additionally, he stated that interested individuals could

732

receive more information by contacting "O.R. National, P.O. Box 127, Summerville, SC 29484."

11. Individuals whose names were placed on mailing lists after registering at an Operation Rescue rally received a postcard identifying the times, dates, and locations of the "Capitol Project Rallies" and stating that they are sponsored by Operation Rescue National. Pl.Ex. 5; Kingsley, Tr. 26, 27–29.

12. A newsletter entitled "Operation Rescue National Rescuer" was published from Operation Rescue National's address and included an article stating that "Operation Rescue National's Director Rev. Keith Tucci held a press conference [in Washington, D.C.] on August 30, following his release from a Kansas jail, to announce national rescue events for the rest of this year and into 1992." Pl.Ex. 9, at 5. Among the events was "[t]he Capitol Rescue" scheduled to be held in Washington, D.C. on January 20–22, 1992. *Id.*

13. Keith Tucci, defendant Randall Terry, and defendant Pat Mahoney spoke at a rally on the night of January 22, 1992, during the Capital Project. Roccanova Tr. 42. Keith Tucci was introduced as a leader of Operation Rescue National and spoke about how the group had successfully closed down clinics that day. *Id.* He also solicited funds for his organization. *Id.* at 42–43.

14. Defendant Clifford Gannett had notice of the July 31, 1990 Revised Permanent Injunction. At the hearing on January 24, 1992, Gannett represented himself *pro se* and admitted that he participated in the Operation Rescue events and intervened at one of the "rescue" blockades. Gannett, Tr. 7.

15. Gannett also stated that he wrote and circulated a letter on Project Rescue stationary dated December 9, 1991. Pl.Ex. 2. This letter, according to Mr. Gannett, "encourages individuals to intervene to save human life." Gannett, Tr. 7. It urges readers to "continue to fight the good fight" and announces that "[t]he Capital Project sponsored by Operation Rescue National will take place from January 20th to 22nd." Pl.Ex. 2. The letter urged readers to make hotel reservations and other preparations.

16. At the January 21, 1992 rally, attended by witness Roccanova, both Keith Tucci and defendant Randall Terry (a founder of Operation Rescue) spoke. During Keith Tucci's presentation, "he said they needed contributions to keep their work going and that if people wanted to write checks, they could make them out to Operation Rescue or O.R. National. He could cash either one." Roccanova, Tr. 42–43. Ms. Roccanova's testimony was credible and no witness or document has contradicted it.

17. Two fliers announced the Capital Project. These notices were identical except that one was entitled "Operation Rescue Announces the Capital Project," and the other "Operational Rescue National Announces the Capital Project." Pl.Exs. 3 & 4. Both fliers requested participants to fill out registration forms and mail them with a $10.00 registration fee to Operation Rescue National, P.O. Box 127, Summerville, S.C. 29484.

18. The newsletter and paraphernalia that Randall Terry and Operation Rescue formerly published and sold were produced and marketed by Keith Tucci and Operation Rescue National. Pl.Ex. 8 at 3, 11, 15; Pl. Ex. 9 at 3, 8.

19. Two newsletters, dated April–June 1991 and August/September 1991, were received through United States mail by witness Hudson who testified that she had asked to be placed on Operation Rescue's mailing list when she purchased a tape from that organization over a year earlier. Hudson, Tr. 16. After that, she received these newsletters as well as other "pro-life" literature. *Id.* at 19. Except for the address the newsletters are virtually identical. The April–June edition, called "The National Rescuer," lists its address as Operation Rescue's former address, P.O. Box 1608, Binghamton, N.Y. 13902, while the August/September edition, called "Operation Rescue National Rescuer," lists its address as the Operation Rescue National address of P.O. Box 127, Summerville, SC 29484. Pl.Ex. 8 at 15; Pl.Ex. 9 at 8. Both newsletters have an identical type-style, designate their publication box and table of contents in the same manner, and identify the same section listings including "Remark,"

"Rescue Recap," "Action Alert," and "Resources." Pl.Ex. 8, at 1; Pl.Ex. 9 at 1.

20. A pamphlet, distributed on January 19, 1992 at the Capital Project registration site previously identified in the fliers announcing the Capital Project, noted that "[s]peakers from Operation Rescue are available to come to your city and to hold a rally or speak at your church or civic organization. Please contact ORN at 803–821–8441 for further information." Pl.Ex. 6 at 3; Kingsley, Tr. 28.

21. Randall Terry signed a letter on Operation Rescue stationery that was distributed to Operation Rescue's mailing list. Pl.Ex. 7; Hudson, Tr. 17. The letter's return address was Operation Rescue National's address at P.O. Box 127, Summerville, SC 29484. The letter requested contributions in the form of checks made out to Operation Rescue National. Pl.Ex. 7.

22. Keith Tucci and defendant Randall Terry solicit funds in the name of Operation Rescue and Operation Rescue National interchangeably. Operation Rescue's newsletter is now published by Keith Tucci and Operation Rescue National. Operation Rescue National now provides "Operation Rescue" speakers for local events.

23. Operation Rescue is for all relevant purposes now doing business under the name Operation Rescue National. The actions of Operation Rescue National are the actions of Operation Rescue.

24. Clifford Gannett stated that he was employed as a government attorney and received a salary of approximately $50,000 per year.

25. Participants in the Capitol Project were registered at the lobby of the Best Western hotel. A number of persons in the block of rooms at the hotel participated in the blockades on January 21 and 22, 1992. Kingsley, Tr. 29–30.

## B. The October 26, 1992 Hearing

1. A hearing on plaintiffs' July 17, 1992 Petition for Order to Show Cause was held on October 26, 1992. The petition asserted that defendants Operation Rescue, Operation Rescue National, Project Rescue, Keith Tucci, Clifford Gannett, Joseph Foreman, and Michael Bray violated the July 31, 1990 Revised Permanent Injunction. The petition also requested that the Court add Messrs. Jeff White, Mark Dubioski, Michael King, and Robert Jewitt as named parties to the Injunction.

2. Defendants Operation Rescue, Operation Rescue National, Project Rescue, Keith Tucci, Clifford Gannett, Joseph Foreman, and Michael Bray did not contest plaintiffs' contempt allegations. Messrs. White, Dubioski, Michael King, and Robert Jewitt also failed to contest the factual basis for the petition. Defendants objected to the petition on purely jurisdictional grounds.

3. Defendants did not contest the petition's presentation of their January 20–22, 1992 actions, which were substantiated at the January 24, 1992 Hearing and are summarized above.

4. Defendant Clifford Gannett participated in the April 4, 1992 blockade of the Hillcrest Women's Surgi–Center in Southeast Washington. He was arrested by the police for blocking the doorways to the clinic. Petition, Ex. F at 2–3.

5. Defendant Michael Bray blockaded the back door of the Hillcrest clinic on April 4, 1992. Petition, Ex. H at 2.

6. Respondent Jeff White directed and instructed participants in the Hillcrest blockade on April 4. Petition, Ex. G at 4–5.

7. Respondent Michael King participated in the effort to block access to the Hillcrest clinic on April 4, 1992. At the direction of Defendant Gannett, Mr. King used a portable phone to call others in order to assemble enough people to block access. Later, Mr. King ordered the demonstrators to lock arms as the police tried to arrest them. Mr. King was near the front door of the clinic, on clinic property, when he gave these orders. Petition, Ex. F at 2; Ex. J at 3.

8. Respondent Mark Dubioski ordered demonstrators to crawl under the police line to reach and blockade the back door of the Hillcrest Clinic. Petition, Ex. J at 3.

9. Respondent Robert Jewitt participated in the January 21, 1992 blockade of the Capi-

tol Women's Center. He participated directly in the blockades and assisted with planning strategy for the events. Petition, Ex. I at 1–2. Mr. Jewitt has also written letters on Operation Rescue stationery soliciting funds and assistance for future Operation Rescue projects. Petition, Ex. M.

10. Defendant Pat Mahoney spoke at an Operation Rescue rally on April 3, 1992. At the rally, a schedule of events printed on Operation Rescue stationery was distributed. The flier listed Pat Mahoney as the contact person for the events. Petition, Ex. G at 2 & attachment 6.

11. Defendant Operation Rescue advertised and promoted the April 3–5 events, which included the blockades. Promotional materials included the schedule of events on Operation Rescue stationery (Petition, Ex. G attachment 6) and two maps of event sites distributed at the Operation Rescue rally. Petition, Ex. G at 3 & attachments 7 & 8.

12. Defendant Operation Rescue National printed a brochure announcing the weekend events. The brochure advocated civil disobedience: "[C]ivil disobedience is not the issue—Biblical obedience to the command to rescue innocent unborn children from death is the issue." Petition, Ex. G, attachment 1.

13. Operation Rescue National and defendant Keith Tucci solicited and raised funds to support the April 3–5 weekend activities. Petition, Ex. G, attachments 3 & 4.

14. Defendant Project Rescue solicited funds and participants for the April 3–5 events. In a letter to "fellow prolifer[s]" written on Project Rescue letterhead, Defendant "Kip" Gannett wrote that "Project Rescue, in concert with Randall Terry and Pat Mahoney, will be holding Rallies in support of a weekend of prolife, profamily, counter demonstrations [sic]." Petition, Ex. G, attachment 5. The letter made no direct reference to the blockades, but stated "Planned prolife activities for the weekend will be fully discussed at the Rallies." *Id.*

15. Defendant Gannett and several other protesters in the April 4 blockades wore Project Rescue t-shirts. Petition, Ex. F at 2.

16. The blockaders damaged the property of the Hillcrest Women's Surgi-Center. In the course of the January 22, 1992 blockade, demonstrators destroyed a fence and damaged the lawn and some cabbage plants. The April 4, 1992 blockaders damaged flower beds that had just been planted and destroyed juniper bushes. The clinic has been billed $1,010 for repairs to property damaged in the blockades.

### III. Conclusions of Law

1. The Court has personal jurisdiction over Keith Tucci, Clifford Gannett, Randall Terry, Patrick Mahoney, Operation Rescue, and Operation Rescue National for the purposes of this civil contempt hearing. *See Halderman v. Pennhurst State Sch. & Hosp.,* 673 F.2d 628, 637 (3d Cir.1982) (stating settled rule that "the merits of the underlying order may not be called into question in a post-judgment civil contempt proceeding" (citing *Oriel v. Russell,* 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419 (1929)).

2. This Court has pendent jurisdiction over the subject matter of this contempt proceeding, *Bray v. Alexandria Women's Health Clinic,* —— U.S. ——, ——, 113 S.Ct. 753, 767–69, 122 L.Ed.2d 34 (1993), and authority to cite defendants for contempt of its orders even though appeal from them is pending. *Plaquemines Parish Comm'n Council v. United States,* 416 F.2d 952, 954 (5th Cir.1969).

3. Clifford Gannett, Operation Rescue, Keith Tucci, and Operation Rescue National knowingly and deliberately violated the July 31, 1990 Revised Permanent Injunction. Specifically, these persons and organizations violated those provisions of the Injunction barring all defendants and those acting in concert with them "from inducing, encouraging, directing, aiding, or abetting others" to trespass on, blockade, or obstruct access to or egress from facilities at which abortions are performed and other medical services are rendered. Revised Permanent Injunction at 3.

4. Defendants Gannett and Bray, as well as Jeff White, Michael King, Mark Dubioski, and Robert Jewitt blockaded and ordered others to blockade clinics on April 4, 1992, in violation of the Injunction. Defendants Operation Rescue and Operation Rescue Na-

tional provided the organizational resources for this illegal activity, which was carried out under the names of Operation Rescue and Operation Rescue National.

5. In blockading the clinics, defendants violated District of Columbia trespass law, which states:

> Any person who, without lawful authority, shall enter, or attempt to enter, any public or private dwelling ... against the will of the lawful occupant or of the person lawfully in charge thereof ... shall be guilty of a misdemeanor.

D.C.Code § 22–3102. The participants in the blockades were under Court order not to trespass on the clinics and were ordered by clinic personnel and/or police at the time of the blockades to leave the property. Their presence on the property, clearly without lawful authority, constitutes trespass.

6. The blockades violated District of Columbia public nuisance law. *B & W Management, Inc. v. Tasea Investment Co.*, 451 A.2d 879, 881 ("A public nuisance is an unreasonable interference with a right common to the general public," citing Restatement (Second) of Torts § 821B(1) (1979)). Interference with the interests of the community and the convenience of the general public also constitutes public nuisance. *Id.* at 881 n. 5. The blockades, conducted in order to prevent patients and doctors from entering the clinics, were a nuisance for those who worked in and used the clinics' facilities, depriving them of access to their jobs and to health care services. Such conduct was also a nuisance to the general public and to the city, which was forced to provide law enforcement officers to control the blockades. The blockades constituted a public nuisance in violation of District of Columbia law and warranted the Injunction issued against defendants.

7. Keith Tucci and Operation Rescue National are in contempt for refusing to obey the subpoena, properly served on Keith Tucci and Operation Rescue National on January 22, 1992.

8. Keith Tucci and Operation Rescue National are in contempt of Court for failing to appear for the January 24, 1992 show cause hearing.

9. The July 31, 1990 Revised Permanent Injunction explicitly stated that, in order to coerce compliance, if the terms of the Injunction were violated, there would be a "fine to be paid to the medical facility or facilities that are or become the target of the violation." Due to the dual compensatory and coercive nature of civil contempt proceedings, future contempt fines were intended to be payable to the plaintiff clinics "as additional deterrence, and because plaintiffs have demonstrated that defendants' activities cause damage to the blockaded clinics." Memorandum, July 31, 1990 at 13. *See generally New York v. Shore Realty Corp.*, 763 F.2d 49, 54 (2d Cir.1985); *N.A. Sales Co. v. Chapman Indus. Corp.*, 736 F.2d 854, 857 (2d Cir.1984).

10. The Revised Permanent Injunction shall be modified as follows: the $5,000 sanction, which doubles upon succeeding violations, against individuals found in contempt of the Injunction shall apply against Randall Terry and Michael Bray for any future violations in addition to the individuals named in the Injunction and in the January 16, 1992 Order.

11. Based on the evidence submitted with plaintiffs' July 17, 1992 Petition, the Revised Permanent Injunction shall be further modified to include Jeff White, Michael King, Mark Dubioski, and Robert Jewitt as named parties to the Injunction. These parties shall be enjoined and restrained from inducing, encouraging, directing, aiding, or abetting others in any manner, or by any means, to trespass on, to blockade, or to impede or obstruct access to or egress from any facility at which abortions, family planning services, or gynecological services are performed in the District of Columbia.

12. In aid of coercing compliance, the Clerk of this Court shall enter judgment in favor of plaintiffs for distribution by them to the clinics at which blockades occurred in January and April 1992 as follows:

a. Against Keith Tucci for knowingly and deliberately violating the Revised Permanent Injunction, singly and in active concert with defendants Clifford Gannett and Operation Rescue, $5,000 for the January violations and

$10,000 for the April violations, totalling $15,-000.

b. Against Keith Tucci for his failure to appear on January 24, 1992, the sum of $41,-600, being $100.00 per day for each day between January 24, 1992 and March 16, 1993, without prejudice to future motions for judgment in amounts equal to $100.00 per day each day which passes until Keith Tucci enters an appearance in the matter.

c. Against Operation Rescue National and Operation Rescue, jointly, for deliberate violations of the Revised Permanent Injunction, $50,000 for each weekend of activity, totalling $100,000.

d. Against Clifford Gannett for knowing and deliberate violations of the Revised Permanent Injunction, $5,000 for the January activities and $10,000 for the April activities, totalling $15,000.

e. Against Patrick Mahoney for knowing and deliberate violations of the Revised Permanent Injunction, $2,500 for the January violations and $7,500 for the April violations, totalling $10,000.

f. Against Operation Rescue and Operation Rescue National, $1,010 to compensate the Hillcrest Women's Surgi–Center for property damages resulting from the blockades.

13. It is the responsibility of plaintiffs to execute these judgements, using such private,[2] District of Columbia,[3] and United States government[4] collection assistance as may be available to them.

### ·ORDER

The Court has established a schedule of sanctions in order to deter future violations of the Revised Permanent Injunction Order filed July 31, 1990, as modified by Orders filed September 25, 1990, and January 16, 1992. These Orders warned defendants that

in event of future violations, sanctions would be imposed as follows:

Against Operation Rescue, a $50,000 fine, to be paid to the targeted facilities;

Against Clifford Gannett, Joseph Foreman, Susan Odom, or Michael McMonagle, a $5,000 fine, doubling with each succeeding violation, to be paid to the targeted facilities;

Against Patrick Mahoney, a $2,500 fine, tripling with each succeeding violation, to be paid to the targeted facilities;

Against Project Rescue, a $10,000 fine, doubling with each succeeding violation, to be paid to the targeted facilities;

Against Keith Tucci, whose name was added to the list of enjoined persons by Order of January 16, 1992, a $5,000 fine, doubling with each succeeding violation, to be paid to the targeted facilities.

As established by the foregoing findings of fact and conclusions of law, the following defendants have violated the Injunction, as modified, and are now to be subjected to the foregoing sanctions prescribed.

Accordingly, it is this 15th day of March, 1993, hereby

ORDERED: that in aid of coercing compliance, the Clerk of this Court shall enter judgment in favor of plaintiffs for distribution by them to the clinics at which blockades occurred in January and April 1992 as follows:

a. Against Keith Tucci for knowingly and deliberately violating the Revised Permanent Injunction, singly and in active concert with defendants Clifford Gannett and Operation Rescue, $15,000.

b. Against Keith Tucci for his failure to appear on January 24, 1992, the sum of $41,-600, being $100.00 per day for each day between January 24, 1992 and March 16, 1993, without prejudice to future motions for judgment in amounts equal to $100.00 per

---

**2.** See Final Judgment, *Donald v. United Klans of America,* C.A. 84–0725 (S.D.Ala. Feb. 12, 1987) (*see* L.A. Times at 2, col. 1 (NEXIS) (private collection of judgment described)).

**3.** See D.C.Code § 15–307 (enforcement of judgments). *See also U.S. Const. art. IV, § 1.*

**4.** See Meredith v. Fair, 328 F.2d 586, 587 (5th Cir.1962) (federal government participation as *amicus curiae* in private federal litigation).

day each day which passes until Keith Tucci enters an appearance in the matter.

c. Against Operation Rescue National and Operation Rescue, jointly, for deliberate violations of the Revised Permanent Injunction, $100,000.

d. Against Clifford Gannett for knowing and deliberate violations of the Revised Permanent Injunction, $15,000.

e. Against Patrick Mahoney for knowing and deliberate violations of the Revised Permanent Injunction, $10,000.

f. Against Operation Rescue and Operation Rescue National, $1,010 to compensate the Hillcrest Women's Surgi–Center for property damages resulting from the blockades; and it is further

ORDERED: that the Revised Permanent Injunction is hereby modified such that the $5,000 sanction, which doubles upon succeeding violations, against individuals found in contempt of the Injunction shall apply for future violations against Randall Terry and Michael Bray in addition to the individuals named in the Injunction and in the January 16, 1992 Order; and it is further

ORDERED: that the Revised Permanent Injunction is further modified to include Jeff White, Michael King, Mark Dubioski, and Robert Jewitt as named parties to the Injunction. These parties are enjoined and restrained from inducing, encouraging, directing, aiding, or abetting others in any manner, or by any means, to trespass on, to blockade, or to impede or obstruct access to or egress from any facility at which abortions, family planning services, or gynecological services are performed in the District of Columbia.