# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 5, 2009          Decided April 9, 2010

No. 08-7100

OSCAR SALAZAR, BY HIS PARENTS AND NEXT FRIENDS,
ADELA AND OSCAR SALAZAR, ET AL.,
APPELLEES

v.

DISTRICT OF COLUMBIA, ET AL.,
APPELLANTS

Appeal from the United States District Court
for the District of Columbia
(No. 1:93-cv-00452)

*Richard S. Love*, Senior Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellants. With him on the briefs were *Peter J. Nickles*, Attorney General, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General. *Robert C. Utiger*, Senior Assistant Attorney General, entered an appearance.

*Kathleen L. Millian* argued the cause for appellees. With her on the brief were *Bruce J. Terris* and *Jane M. Liu*.

Before: GARLAND and GRIFFITH, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*:   In 1993, appellee Medicaid recipients brought suit against the District of Columbia ("the District") alleging various violations of Title XIX of the Social Security Act ("SSA"), 79 Stat. 343, as amended, 42 U.S.C. § 1396 *et seq.* (2000 ed. and Supp. III), and its accompanying regulations.   In October 1996, the District Court held that the District was liable under 42 U.S.C. § 1983 for violating federal Medicaid requirements.  *Salazar v. District of Columbia*, 954 F. Supp. 278 (D.D.C. 1996).   While judgment was pending on an appeal by the District, the parties negotiated a comprehensive settlement agreement setting forth detailed requirements for the District's operation of its Medicaid program in compliance with the law.  The District Court adopted the agreement with an order issued on January 25, 1999. *Salazar v. District of Columbia*, Civ. Action No. 93-452, Order Modifying the Amended Remedial Order of May 6, 1997 and Vacating the Order of March 27, 1997 at 1-49 (D.D.C. Jan. 25, 1999) ("*Settlement Order*"), *reprinted in* Joint Appendix ("J.A.") 264-312.

On March 19, 2003, after repeated failures by the District to comply with various requirements and deadlines under the *Settlement Order* and related court orders, appellees moved to establish a prospective, per diem penalty schedule of fines for future violations.  The District Court granted appellees' motion on July 10, 2006.  *Salazar v. District of Columbia*, Civ. Action No. 93-452, order at 1-3, slip op. at 1-4 (D.D.C. Jul. 7, 2006) ("*2006 Order*"), *reprinted in* J.A. 484-90.  The *2006 Order* directed appellees to file a praecipe with the District Court every fiscal quarter, documenting any penalties allegedly accrued during that three-month period.

Between 2006 and 2008, appellees filed five quarterly praecipes documenting penalties allegedly accrued by the

District. Each praecipe was opposed by the District. On August 13, 2008, the District Court ruled on all five outstanding praecipes and issued an order assessing $931,050 in penalties against the District. *Salazar v. District of Columbia*, Civ. Action No. 93-452, order at 1-2, slip op. at 1-15 (D.D.C. Aug. 13, 2008) ("*2008 Order*"), *reprinted in* J.A. 618-35. The *2008 Order* addressed each of the praecipes separately. With respect to the fourth praecipe, covering the third quarter of 2007, the District Court, *inter alia*, assessed $370,500 in penalties for the District's alleged failure to "negotiate in good faith," as required by ¶ 80 of the *Settlement Order*.

On August 27, 2008, the District filed a motion for partial reconsideration. The sole argument raised in that motion was that the sanctions imposed for the District's failure to timely provide blood lead corrective action plans ("CAPs") should be vacated because the relevant underlying order had not been violated. This motion was denied. On appeal, the District has raised numerous issues that were never raised with the District Court in the first instance, including, *inter alia*, claims that the District Court (1) erred in imposing criminal contempt sanctions in a civil proceeding and (2) erred in imposing excessive penalties based on a misapplication of ¶ 80 of the *Settlement Order*. Appellees, in turn, argue that this court lacks jurisdiction to hear this appeal.

First, we hold that the *2008 Order* is final and appealable under 28 U.S.C. § 1291. We also hold that the *2006 Order* is reviewable to the extent that it is "'inextricably bound up with'" the *2008 Order*. *See Hartman v. Duffey*, 19 F.3d 1459, 1464 (D.C. Cir. 1994) (quoting *Wagner v. Taylor*, 836 F.2d 578, 585 (D.C. Cir. 1987)).

Second, we affirm the District Court's judgment on all but one issue. The District failed to raise and preserve most of the claims that it now raises on appeal. "[C]ourts of appeals have discretion to address issues raised for the first time on appeal,"

but exercise it "only in exceptional circumstances," *Flynn v. Comm'r*, 269 F.3d 1064, 1069 (D.C. Cir. 2001), or when the trial court has committed "plain error," *United States v. Olano*, 507 U.S. 725, 736-37 (1993) (citing *Connor v. Finch*, 431 U.S. 407, 421 n.19 (1977) (civil appeal)).  Because we find neither exceptional circumstances nor plain error, we hold that the District has forfeited most of the issues that it has raised with this court.  The one exception relates to the question regarding the misapplication of ¶ 80.  On this issue, we hold that the District Court committed error in subjecting the District to a 126-day contempt fine for its failure to negotiate with appellees under ¶ 80 of the *Settlement Order*.  Although the *2006 Order* states that the "deadlines" enforceable through per diem fines "include the negotiation requirement in paragraph 80," it does not say that per diem fines can be imposed for a failure to negotiate beyond, rather than within, the 10-day window specified in ¶ 80.  The District Court erred in finding otherwise; the error affected the District's substantial rights and offended the fairness and integrity of the proceedings under review.  It also constituted a miscarriage of justice.

For the reasons outlined below, we affirm in part and reverse in part.  The case will be remanded to the District Court for further proceedings consistent with this opinion.

## I. BACKGROUND

The Medicaid program entails joint federal and state funding of medical care for individuals who cannot afford to pay their own medical costs.  The program was launched in 1965 with the enactment of Title XIX of the SSA.  *See Ark. Dep't of Health & Human Servs. v. Ahlborn*, 547 U.S. 268, 275 (2006).  "States are not required to participate in Medicaid, but all of them do. The program is a cooperative one; the Federal Government pays [a percentage] of the costs the State incurs for patient care, and, in return, the State pays its portion of the costs and complies with certain statutory requirements for making

eligibility determinations, collecting and maintaining information, and administering the program." *Id.* (footnote omitted); *see also* 42 U.S.C. § 1396a; 42 C.F.R. § 430.10 (requiring participating states to act "in conformity with the specific requirements" of the federal Medicaid statute and applicable federal regulations). The District participates in the Medicaid program on the same terms as the states, because the statute "treats the District . . . as a State." *See D.C. Hosp. Ass'n v. District of Columbia*, 224 F.3d 776, 777 (D.C. Cir. 2000); 42 U.S.C. § 1396d(b) (Supp. III 1997).

In 1993, a number of Medicaid recipients brought suit under § 1983 against the District, alleging violations of Title XIX and its accompanying regulations. After the District Court found the District liable, *Salazar v. District of Columbia*, 954 F. Supp. at 334, an appeal was taken. While the appeal was pending, the parties reached a settlement which was adopted by the District Court in the 1999 *Settlement Order*. Over time, additional orders imposing additional requirements on the District were added to the *Settlement Order*.

In March 2003, after the District had repeatedly violated the terms of the *Settlement Order*, appellees filed a motion with the District Court for the establishment of a per diem penalty schedule of fines for future violations. The motion was granted on July 10, 2006, with the court's issuance of the *2006 Order*. This order set forth a progressive, escalating fine schedule for missed deadlines that compounds the total penalty for noncompliance based on the number of days elapsed. *See 2006 Order*, order at 2, J.A. 485. The *2006 Order* also directed appellees to file a praecipe with the District Court every fiscal quarter, documenting any penalties allegedly accrued by the District during that three-month period. The District could file an opposition and appellees could file a reply. The District Court indicated that it would consider the praecipes and any

mitigating circumstances, and then decide whether or not to impose fines.

Between 2006 and 2008, appellees filed five quarterly praecipes documenting the penalties allegedly accrued by the District. Each was opposed by the District. On August 13, 2008, the District Court ruled on all five outstanding praecipes at the same time and assessed $931,050 in penalties against the District. *See 2008 Order*, slip op. at 1-15, J.A. 621-35.

In the first praecipe, covering the third quarter of 2006, the District Court assessed $1,500 in penalties for the District's failure to provide discovery until nine days after the required deadline. In the second praecipe, covering the fourth quarter of 2006, the District Court assessed $39,500 in penalties for the District's failure to distribute a dental brochure by a deadline set forth in a 2004 order; the court also assessed a penalty of $300 for the District's failure to seek a timely extension of time. In the third praecipe, covering the second quarter of 2007, the District Court (1) assessed $13,500 in penalties for the District's failure to timely provide blood level CAPs as required under a 2003 order; (2) assessed a penalty of $10,000 for the District's failure to submit a Provider Education Report; and (3) denied appellees' request to assess $110,500 in penalties for the District's alleged failure to complete an Annual Oral Health Summary Report, finding that the requested sanction was excessive.

In the fourth praecipe, covering the third quarter of 2007, the District Court (1) assessed $152,000 in penalties for the District's continuing failure to provide blood lead level CAPs until 126 days after the required deadline; (2) assessed $290,500 in penalties for the District's continuing failure to provide a required Provider Education Report until 112 days after the deadline; (3) assessed $370,500 in penalties for the District's alleged breach of ¶ 80 of the *Settlement Order* when it delayed 126 days before commencing to "negotiate in good faith" over

an enforcement motion proposed by appellees; and (4) denied appellees' request to assess $265,000 in penalties for the District's alleged continuing failure to provide a complete Annual Oral Health Summary Report.  Finally, in the fifth praecipe, covering the first quarter of 2008, the District Court (1) assessed $11,500 in penalties for the District's failure to timely submit a Dental CAP as required by a 2004 order; (2) assessed $2,250 in penalties for the District's failure to timely comply with discovery; (3) assessed $39,500 in penalties for the District's failure to timely provide annual notifications to providers on reimbursement procedures; (4) denied appellees' proposed penalty for the District's allegedly deficient Annual Oral Health Survey Report; and (5) denied appellees' proposed penalty for the District's alleged failure to respond to certain discovery requests.

On August 27, 2008, the District filed a motion for partial reconsideration.  *See* Def.'s Mot. for Partial Recons. of the Court's Order of Aug. 13, 2008 (Aug. 27, 2008), *reprinted in* J.A. 636-42. The sole argument raised by the District in that motion was that the penalties imposed for its alleged failure to timely provide blood level CAPs should be vacated because the relevant underlying order had not been violated.  The District did *not* contend that the penalties imposed by the District Court improperly constituted sanctions for criminal contempt, that any aspect of the *2008 Order* was ambiguous or otherwise unclear, or that the District Court had improperly failed to conduct an evidentiary hearing.  *Id.* at J.A. 636.  The District's motion was denied.  *Salazar v. District of Columbia*, Civ. Action No. 93-452, Minute Entry Order (D.D.C. Jan. 29, 2009), *reprinted in* J.A. 643-44.

On appeal to this court, the District argues that the District Court committed a variety of errors, including imposing criminal contempt sanctions in a civil proceeding, failing to afford the District an evidentiary hearing prior to the imposition

of sanctions for contempt, generally imposing excessive fines based a mechanical application of the *2006 Order*, and imposing an enormously excessive fine based on a misapplication of ¶ 80 of the *Settlement Order.* Appellees, in turn, contend that this court lacks jurisdiction to hear this appeal.

## II. ANALYSIS

### A. *Jurisdiction*

Appellees contest this court's jurisdiction to hear this appeal. Appellees contend that the *2008 Order* is barred from review because it is not final under 28 U.S.C. § 1291; and they argue that appeal of the *2006 Order* is untimely. Neither contention has merit.

The *2008 Order* is final and hence appealable because the District Court concluded that specific, unavoidable penalties "have accrued and are hereby assessed" against the District. *See 2008 Order*, order at 2, J.A. 620. It is immaterial that the *2008 Order* did not specify how the penalties were to be paid or indicate the ultimate disposition of the funds. Even a "conditional sanction" imposed for failure to comply with a District Court order can be final and appealable. *Armstrong v. Exec. Office of the President, Office of Admin.*, 1 F.3d 1274, 1289 (D.C. Cir. 1993) (internal quotation marks omitted). Therefore, there hardly can be any doubt that the "accrued" and "assessed" penalties imposed by the *2008 Order* made the District Court's judgment final for purposes of review under § 1291.

This court also has jurisdiction to review the *2006 Order* to the extent that it is "'inextricably bound up with'" the *2008 Order*. *See Hartman*, 19 F.3d at 1464 (quoting *Wagner*, 836 F.2d at 585). It does not matter whether the *2006 Order*, without more, was final and appealable under § 1291. *See Hartman*, 19 F.3d at 1463. So long as the *2008 Order* is final, this court's "jurisdiction over that final decision extends as well

to the interlocutory rulings that preceded it." *Ciralsky v. CIA*, 355 F.3d 661, 668 (D.C. Cir. 2004).

**B.    *Standard of Review***

"To preserve a claim of error on appeal, a party typically must raise the issue before the trial court. . . . 'No procedural principle is more familiar . . . than that a . . . right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.'" *In re Sealed Case*, 552 F.3d 841, 851-52 (D.C. Cir. 2009) (quoting *Yakus v. United States*, 321 U.S. 414, 444 (1944)).  None of the principal arguments advanced by the District in this case – that the District Court improperly imposed criminal contempt penalties in a civil proceeding and improperly denied the District an evidentiary hearing prior to issuing contempt sanctions; that the fines imposed were mechanical and excessive; or that the trial court misapplied ¶ 80 of the *Settlement Order* – was raised below.  Generally, an argument not made in the trial court is forfeited and will not be considered absent "exceptional circumstances." *Nemariam v. Fed. Democratic Republic of Ethiopia*, 491 F.3d 470, 483 (D.C. Cir. 2007) (internal quotation marks and citations omitted). "[C]ourts of appeals have discretion to address issues raised for the first time on appeal," but exercise such discretion "only in exceptional circumstances, as, for example, in cases involving uncertainty in the law; novel, important, and recurring questions of federal law; intervening change in the law; and extraordinary situations with the potential for miscarriages of justice." *Flynn*, 269 F.3d at 1069.

Under the Federal Rules of Criminal Procedure, courts may take notice of "plain error[s]" not preserved below in criminal cases. *See* FED. R. CRIM. P. 52(b).  Many courts have indicated that plain error review is available in situations involving unpreserved claims of error affecting substantial rights in civil cases. *See Olano*, 507 U.S. at 736 (citing *Connor*, 431 U.S. at

421 n.19 (1977)); *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 396-97 (4th Cir. 2004); *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1424 (5th Cir. 1996); *see generally* HARRY T. EDWARDS & LINDA A. ELLIOTT, FEDERAL STANDARDS OF REVIEW 91-92 (2007). *Olano* allows reversal for plain error where there is (1) "error" that is (2) "plain," (3) "affects substantial rights" of the parties, and (4) "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732 (internal quotation marks and citations omitted). "An error 'affec[ts] substantial rights' if it is 'prejudicial' or 'affected the outcome of the district court proceedings.'" *United States v. Perry*, 479 F.3d 885, 892 (D.C. Cir. 2007) (quoting *Olano*, 507 U.S. at 734).

"Exceptional circumstances" and "plain error" review may be related in certain instances. *See, e.g.*, *Long v. Howard Univ.*, 550 F.3d 21, 25-26 (D.C. Cir. 2008). We have yet to determine whether the two inquiries are coterminous. To the extent that plain error review applies, however, the court must "'take[ ] account of the differences' between civil litigation and criminal prosecution." *Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 168 & n.5 (D.C. Cir. 2007) (quoting FED. R. CIV. P. 51 advisory committee's notes to 2003 amendments); *see also Long*, 550 F.3d at 26 & n.*.

With respect to all but one of the District's claims, we find that the issues raised are subject to neither exceptional circumstances nor plain error review. As explained below, the one exception is the error the District Court committed in its misapplication of ¶ 80 of the *Settlement Order*.

## C. *Criminal Versus Civil Contempt*

The District claims that the trial court committed reversible error by improperly imposing criminal sanctions in a civil proceeding. We disagree. "At a minimum, a court of appeals

cannot correct an error" under plain error review "unless the error is clear under current law." *Olano*, 507 U.S. at 734. A number of the fines imposed by the District Court were based on a per diem calculation for contumacious conduct that had ceased at the time of the *2008 Order*. Under existing case law, it is not entirely clear whether such fines constitute sanctions for civil or criminal contempt.

The Supreme Court has described civil contempt sanctions as "remedial" and criminal contempt sanctions as "punitive." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827-28 (1994) (internal quotation marks and citations omitted). The Court acknowledged the difficulty of drawing a bright line, however, since "'[w]hen a court imposes fines and punishments on a contemnor, it is not only vindicating its legal authority to enter the initial court order, but it also is seeking to give effect to the law's purpose of modifying the contemnor's behavior to conform to the terms required in the order.'" *Id.* at 828 (quoting *Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 635 (1988)). As a result, "[m]ost contempt sanctions, like most criminal punishments, to some extent punish a prior offense as well as coerce an offender's future obedience." *Id.*

*Bagwell* describes a civil contempt sanction as one with respect to which "the contemnor is able to purge the contempt . . . by committing an affirmative act." *Id.* And the Court describes a punitive, criminal contempt sanction as one that is "imposed retrospectively for a completed act of disobedience . . . such that the contemnor cannot avoid or abbreviate" the penalty through "later compliance." *Id.* at 828-29 (internal quotation marks and citation omitted). The *Bagwell* Court then says that "per diem fine[s] imposed for each day a contemnor fails to comply with an affirmative court order" are sanctions for civil contempt, whereas "a flat, unconditional fine" with respect to which "the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance" is a sanction for

criminal contempt. *Id.* at 829 (internal quotation marks and citations omitted).

Under the disputed *2008 Order*, the District Court imposed fines in a number of instances for contumacious conduct that had ceased at the time the contempt order issued. However, at least in this case, the fact that the contumacious conduct had ceased when the sanctions were issued would seem to be irrelevant to the determination as to whether the sanctions were civil or criminal. Under *Bagwell*, it would appear that the disputed "per diem fines" were civil contempt sanctions imposed in accordance with the schedule of fines under the *2006 Order* for each day that the District violated applicable terms of the *Settlement Order*. In other words, beginning in 2006, the District had fair notice and an opportunity to purge its ongoing contumacious conduct and avoid penalties by acting in compliance with the *Settlement Order*. The *2006 Order* did not penalize the District for the contumacious conduct that had occurred before that order issued. Rather, it put the District on notice that it would be fined for any such conduct that occurred after the issuance of the *2006 Order*. When the District continued to violate the *Settlement Order* after the issuance of the *2006 Order*, it was made to account for its wrongdoing with the issuance of the *2008 Order*. It did not matter that some of the violations finally ceased before 2008. The penalties imposed by the *2008 Order* could have been avoided only if the District had fully complied with the *Settlement Order* following the District Court's issuance of the *2006 Order*.

A less likely, but not utterly implausible, construction of *Bagwell* is to view the sanctions imposed by the *2008 Order* as "flat, unconditional fines," and thus criminal sanctions, for past wrongs committed by the District. In other words, under this view, the District could claim that it should not have been sanctioned, save through criminal contempt, for *any* contumacious conduct that occurred after the issuance of the

*2006 Order* but ceased before the trial court assessed the praecipes and issued the *2008 Order*. This position finds no real support in the law of this circuit. Indeed, the case law goes the other way.

A good example is *NOW v. Operation Rescue*, 816 F. Supp. 729, 736 (D.D.C. 1993). In that case, the District Court ordered a party to appear in court on January 24, 1992, to show cause why he should not be held in contempt for violating an earlier injunction of the court. The party had actual notice of the trial court's order, yet he failed to comply. At a hearing held on March 16, 1993, at which the party again failed to appear, the trial court fined the appellant "the sum of $41,600, being $100.00 per day for each day between January 24, 1992 and March 16, 1993, without prejudice to future motions for judgment in amounts equal to $100.00 per day each day which passes until [the party] enters an appearance in the matter." *Id.* at 736. This order was affirmed on appeal.

In this court's review of the trial court's contempt order in *Operation Rescue*, we first held that *Bagwell* "did not call into question the traditional classification of *some* categories of contempt sanctions – compensatory fines, coercive imprisonment, and per diem fines to coerce compliance with affirmative court orders – as civil in nature." *Nat'l Org. for Women v. Operation Rescue*, 37 F.3d 646, 659 (D.C. Cir. 1994). We then held that the disputed "per diem fines totalling $41,600 ($100 per day of violation) . . . for failure to appear in court in violation of the court's affirmative order to do so . . . are clearly civil in nature under traditional classifications that remain unchallenged by the *Bagwell* decision." *Id.* at 660. It did not matter to the court that the fines imposed applied to conduct that had already occurred and whose amount could no longer be reduced through compliance. The decision in *Operation Rescue* surely supports the action of the District Court in this case.

This court's later decision in *Evans v. Williams*, 206 F.3d 1292 (D.C. Cir. 2000), adds some wrinkles to the analysis, but it is not fundamentally at odds with the decision in *Operation Rescue* with respect to the issue in dispute in this case. In *Evans*, the District of Columbia appealed from an order of the District Court imposing contempt fines of $5,096,340 for its failure to comply with a consent decree addressing a panoply of constitutional violations resulting from poor conditions at a mental health facility. The District argued that "the fines were indisputably not compensatory (a classic aspect of a civil fine), for they were . . . not at all calibrated to the damage caused by the District's conduct. Moreover, the fines, according to the District, were fixed and determinate; there was no opportunity to escape their consequences by altering behavior, *i.e.*, to purge them once they were imposed. In other words, [in the view of the District], the fines were designed primarily to punish past acts rather than coerce future conduct and therefore should be thought punitive." *Id*. at 1295. The appellees, on the other hand, argued "that the fines should be seen as coercive and therefore civil in character because the schedule of prospective fines was announced in advance." *Id*. In other words, according to the appellees, the District "had the capacity to avoid the fines, so to speak to purge itself of contempt, by altering its conduct prior to the time the fines accrued." *Id*.

In addressing the issues before it, the *Evans* court described the differences between civil and criminal contempt, as follows:

> Traditionally, whether a contempt is civil or criminal has depended on the "character and purpose" of the sanction. A sanction is considered civil if it is "remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441 (1911). There also has been a traditional distinction between mandatory and prohibitory orders. The

> "paradigmatic coercive, civil contempt sanction . . . involves confining a contemnor indefinitely until he complies with an affirmative command." *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 828 (1994). On the other hand, a fixed term of imprisonment imposed retroactively to punish an act of disobedience is criminal. This distinction has been extended to fines, so that "a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order" is civil, but an unconditional fine imposed "after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance." *Id.* at 829.

*Id.* at 1294-95. The *Evans* court then found that the fines imposed for the discrete violations of the consent decree were criminal sanctions. The court reached this conclusion because, "for each act of contempt, the District was subjected to a one-time determinate fine" that once imposed could not be "eliminat[ed] . . . through future compliance." *Id.* at 1296.

Faced with the foregoing case law, the District Court in this case concluded that the per diem fine schedule in the *2006 Order* constituted a "civil, coercive remedy." *See 2006 Order*, slip op. at 3, J.A. 489. This conclusion seems most likely correct in light of *Bagwell*, *Operation Rescue*, and *Evans*, so it surely did not constitute plain error or an exceptional circumstance warranting reversal. We recognize that there is some tension between *Operation Rescue* and *Evans*, if one views the discrete, past violations of the consent decree in *Evans* as comparable to the District's discrete, past violations of the *Settlement Order* and *2006 Order* in this case. But an argument framed in this way cannot go very far. The decision in *Evans* clearly recognizes that "*a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order is civil*, but an unconditional fine imposed after a finding of

contempt is criminal *if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance*." 206 F.3d at 125 (internal quotation marks and citations omitted) (emphasis added). In this case, the District was fined pursuant to a schedule of per diem fines and it had an opportunity to limit or avoid the fines altogether by complying with the *Settlement Order* after the issuance of the *2006 Order*. Even if *Evans* and *Operation Rescue* leave some room for debate, there is nothing in these decisions to indicate that the District Court in this case committed plain error in reaching the conclusion that it did.

The District Court cited both *Bagwell* and *Evans* in its *2006 Order*, explaining the legal basis for its fine schedule. *See 2006 Order*, slip op. at 3, J.A. 489. The District, however, raised no objections or questions regarding the civil nature of the contempt proceedings either in 2006 or in 2008. The preservation requirement is intended to give the parties an opportunity to try the case on the grounds presented. Allowing the District to raise this argument now would "skew the balance between 'our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed.'" *United States v. Davis*, 974 F.2d 182, 190-91 (D.C. Cir. 1992) (quoting *United States v. Frady*, 456 U.S. 152, 163 (1982)).

In sum, on the record in this case, neither plain error nor exceptional circumstances lend merit to the District's newly raised challenge to the civil nature of the contempt proceedings below.

## D.  *Evidentiary Hearing*

The District claims that the District Court erred in failing to provide an evidentiary hearing before imposing the disputed fines. This claim was never raised below so it is subject to review only for plain error or if we find exceptional circumstances. We find neither.

It is true that, "[i]n this circuit, '[e]very civil contemnor who asserts a genuine issue of material fact is entitled to a full, impartial hearing.'" *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union, AFL-CIO-CLC*, 103 F.3d 1007, 1019 (D.C. Cir. 1997) (quoting *Wash. Metro. Area Transit Auth. v. Amalgamated Transit Union*, 531 F.2d 617, 620 (D.C. Cir. 1976)). The District, however, has raised no genuine issues of material fact warranting a hearing. The District has not credibly contested its failure to meet any of the deadlines pursuant to which it was fined. And it has cited no facts that might raise any legitimate defense to its contumacious conduct. Indeed, the District has not advanced a "good faith and substantial compliance" defense, *see Food Lion*, *Inc.*, 103 F.3d at 1017, nor has it seriously argued "that it took all reasonable steps within [its] power to comply with the court's order," as required by that defense. *Id.* (internal quotation marks and citation omitted).

In these circumstances, the District's claim cannot survive plain error or exceptional circumstances review.

### E. *The District's Challenges to the Fines Imposed*

The District makes two additional arguments generally challenging the fines imposed. It claims, first, that the fines are "[d]isproportionately [h]igh" for the violations at issue, and, second, that the fines are unfair because they were "[i]mposed [m]echanically" under the scheme set forth in the *2006 Order*. Appellant's Br. at 35. These claims were never raised below so they are subject to review only for plain error or if we find exceptional circumstances. We find neither.

This court typically reviews "contempt finding[s]" and "sanction[s]" for abuse of discretion. *See In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 818 (D.C. Cir. 2009); *Food Lion, Inc.*, 103 F.3d at 1016. Given this deferential standard of review, the District would have been hard pressed to support its claims even

if they had been properly raised and preserved. The trial court imposed the fines pursuant to a previously announced fee schedule, so the District had fair notice of the sanctions that might follow any violations of the *Settlement Order*. The District Court also specifically considered the severity of each fine in relation to the harm caused. Moreover, under the scheme set forth in the *2006 Order*, fines are "not . . . automatic," for they may be "oppose[d]" by the District; and the District Court has "discretion to consider any mitigating circumstances pertaining to specific missed deadlines." *2006 Order*, slip op. at 3, J.A. 489. Indeed, the District opposed each praecipe, and the District Court exercised its discretion in declining to impose contempt fines in some situations with respect to which it believed that the District had violated the *Settlement Order. See, e.g.*, *2008 Order*, slip op. at 6, J.A. 626.

In these circumstances, the District's claims do not survive either plain error or exceptional circumstances review.

**F.** ***Contempt for the District's Alleged Violation of ¶ 80 of the Settlement Order***

Finally, the District argues that the District Court committed reversible error in subjecting it to a 126-day contempt fine for its alleged failure to negotiate with appellees under ¶ 80 of the *Settlement Order*. This claim was not raised below. However, the underlying facts are not in dispute, the parties have fully briefed and argued the issue, and the trial court committed plain error. We therefore reverse.

Civil contempt may be imposed only when the underlying order is clear and unambiguous. *See, e.g.*, *Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006); *Armstrong*, 1 F.3d at 1289 (citing *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 16 (1st Cir. 1991)). "The judicial contempt power is a potent weapon," and "[w]hen it is founded upon a decree too vague to be understood, it can be a deadly one. Congress responded to

that danger by requiring that a federal court frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid." *Int'l Longshoremen's Ass'n, Local 1291 v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76 (1967); *see also* FED. R. CIV. P. 65(d) (requiring "[e]very order granting an injunction" to "state the reasons why it issued," "state its terms specifically," and "describe in reasonable detail . . . the act or acts restrained or required"). Furthermore, a contemnor cannot be expected to purge civil contempt through "reduc[tion] or avoid[ance]," *see Bagwell*, 512 U.S. at 829, without having clear and unambiguous notice of the proscribed conduct.

Paragraph 80 of the *Settlement Order* is clear. It reads:

Before any party moves the Court to enforce or construe [the requirements of the underlying *Settlement Order*] . . . it shall give the other party 10 days' notice of its intention. *During that 10-day period, the parties shall negotiate in good faith* in an effort to resolve the dispute without seeking a decision from the Court.

*Settlement Order* at 46, J.A. 309 (emphasis added). The *2006 Order* states that the "deadlines" enforceable through per diem fines "include the negotiation requirement in paragraph 80." *2006 Order*, order at 2, J.A. 485. This provision was included in the *2006 Order* because,

[i]n many instances, after [appellees] filed requisite notices [pursuant to] ¶ 80 of the *Settlement Order*, [the District] failed to file any response indicating whether they did or did not oppose the motion and whether they were prepared to negotiate in good faith *during the 10-day pre-filing period* in an effort to resolve the dispute without Court intervention.

*2006 Order*, slip op. at 2, J.A. 488 (emphasis added). As the District Court obviously recognized, the only timing

requirement under ¶ 80 directs the parties to negotiate *within the specified 10-day period*. In other words, the *Settlement Order* says only that "during [the] 10-day period, the parties shall negotiate in good faith." It does not state that the District must negotiate beyond, rather than within, this window.

In short, the language of ¶ 80 is perfectly clear in what it requires. And there is nothing in the *2006 Order* that forewarned the District that it might be liable for more than the *Settlement Order* required. Indeed, ¶ 80 is not only clear, it is quite sensible in requiring the appellees to afford the District a small window of opportunity to negotiate any pending disputes before appellees are allowed to seek judicial redress. But this is all that ¶ 80 requires.

Even if it were possible to conjure some "ambiguities or uncertainties" in ¶ 80, we would still be required to read the *Settlement Order* and the *2006 Order* "in a light favorable to the person charged with contempt." *See Kemp*, 947 F.2d at 16. Giving the District the benefit of all reasonable inferences to be drawn from the language of ¶ 80, and giving full effect to the important principle that "a federal court [must] frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid," *Int'l Longshoremen's Ass'n*, 389 U.S. at 76, we hold that the District Court committed plain error in subjecting the District to a 126-day contempt fine for its failure to negotiate with appellees under ¶ 80 of the *Settlement Order*.

We also hold that the District Court's error affected the District's substantial rights, *see Olano*, 507 U.S. at 734-35, because the error obviously changed the outcome on an important issue before the trial court. If the District's fine had been capped at 10 days, as it should have been, the resulting sanction would have been $1,750 per violation (or $17,500), *i.e.*, a sum far less than the $370,500 fine imposed by the District Court.

In *Olano*, the Supreme Court makes it clear that "[i]f [a] forfeited error is 'plain' and 'affect[s] substantial rights,' the court of appeals has authority to order correction, but is not required to do so." 507 U.S. at 735; *see also* HARRY T. EDWARDS & LINDA A. ELLIOTT, FEDERAL STANDARDS OF REVIEW 94 (2007). "[T]he standard that should guide the exercise of [this] remedial discretion . . . . [is that the] Court of Appeals should correct a plain forfeited error affecting substantial rights if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id*. at 736 (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)). This standard is easily met in this case. As noted above, "[t]he judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one." *Int'l Longshoremen's Ass'n*, 389 U.S. at 76. When, as in this case, a District Court's contempt sanction is premised on an interpretation of a settlement order that finds no support in the words of the order, "it cannot stand." *Id.* "The most fundamental postulates of our legal order forbid the imposition of a penalty for disobeying a command that defies comprehension." *Id.* This is clearly an exceptional circumstance warranting the exercise of our discretion to address and correct the error.

### III. CONCLUSION

The judgment of the District Court is affirmed in part and reversed in part. The case is hereby remanded for further proceedings consistent with this opinion.