Opinion for the Court filed by Circuit Judge BROWN.
Concurring opinion filed by Circuit Judge BROWN.
Concurring opinion filed by Circuit Judge PILLARD.
BROWN, Circuit Judge:
Barry Gewin was convicted of securities fraud, wire fraud, and conspiracy to commit fraud. He was sentenced to nine years in prison and ordered to pay almost $2 million in restitution jointly and severally with his co-conspirators and a $500,000 fine. The sentencing court found Gewin had about $650,000 available to him at the time of sentencing and ordered him to turn those funds over to the court as partial payment of his financial obligations. Two years later, the court held a hearing because Gewin had paid only a negligible amount toward his fine and restitution. Gewin assured the court payment would be forthcoming, but subsequently delivered to the clerk of court only a fictitious International Bill of Exchange of his own creation.
In September 2007, the district court held a hearing to determine whether it should hold Gewin in civil contempt until he made the court-ordered payment. Gewin, appearing pro se, asserted no defense; was held in contempt; and remained incarcerated — with his original *75 sentence suspended — for the next five years with little progress made in his case. Gewin never complied with the court’s payment order or successfully asserted a defense to the contempt order. In 2012, Gewin filed a series of documents asserting he could not make the required payments. In November 2012, the district court ruled Gewin had not met his burden of making out an inability-to-comply defense, and ordered Gewin’s contempt status continued. Gewin appealed the November 2012 order, for the first time challenging his contempt status in this court.
Gewin’s primary argument on appeal is that the district court violated his Fifth Amendment right to due process by holding him in contempt without appointing counsel to represent him. Gewin asks this court to vacate his contempt citation nunc pro tunc to September 5, 2007. We lack jurisdiction to hear Gewin’s various challenges to the district court’s 2007 order because Gewin failed to timely appeal that order. With regard to the 2012 proceedings, we hold Gewin waived any due process right to counsel he may have had. We deny Gewin’s remaining challenges and affirm the order of the district court.
I
In 2003, a grand jury indicted Gewin and several codefendants on counts of securities fraud, wire fraud, and conspiracy to commit securities and wire fraud. Gew-in proceeded at trial pro se following a “wide-ranging colloquy” in which the court ensured Gewin understood his decision to proceed without a lawyer and the risks involved. United States v. Gewin, 471 F.3d 197, 199-200 (D.C.Cir.2006). After a jury convicted Gewin of multiple counts, he hired counsel to represent him at sentencing. Gewin refused to provide the probation office with a full release of information for his financial records, and the court largely based its determination of Gewin’s assets on a financial affidavit he had completed. The court found Gewin had available to him for payment of a fine and restitution $120,000 to $140,000 in a BB & T bank account; $150,000 that had been taken from that bank account to be given to Gewin’s wife, Tommi Ferguson, but that Ferguson had not yet deposited in her own account; $5,898.82 in a Global Bank of Commerce Account in Antigua; about $270,000 in a Janney Montgomery Scott LLC account in Ferguson’s name; and $85,643 in a Sky Bank account also controlled by Ferguson. The court held the accounts in Ferguson’s name or under her control were available to Gewin, and considered those funds in its sentencing determination. Thus, the court held Gewin had $651,541.82 available for the payment of a fine or restitution. On April 1, 2005, the court sentenced Gewin to imprisonment for 108 months, ordered Gewin to pay $1,975,786 in restitution, jointly and severally with his co-defendants, and imposed a $500,000 fine. The court also ordered Gewin to transfer all of the funds described above to the court in partial payment of the restitution and fine. Gewin, represented by new counsel, appealed his conviction and sentence, including, specifically, the determination that he was or would become able to pay a $500,000 fine — albeit without challenging the district court’s finding of his control over Ferguson’s accounts. A panel of this court affirmed the judgment of the district court. See Gewin, 471 F.3d 197.
In early 2007, after Gewin’s appeal had concluded and at the government’s request, the district court held a status conference regarding Gewin’s failure to comply with the restitution and fine order. At that time, Gewin had paid only $1,325 toward his obligations. The court informed Gewin that if he failed to make the required payments and, in particular, to turn over the money in the accounts specified in *76 the court’s April 2005 judgment, the government would seek to hold him in contempt. The court also stated that if Gewin did not intend to pay, the court wanted to discuss whether Gewin was going to be represented by counsel for any contempt proceedings. The court told Gewin he could hire his own attorney or the court would appoint one for him. Gewin admitted responsibility for the outstanding fíne and restitution and promised he could and would pay both in full. The court ordered payment by June 8, 2007.
Around June 8, the clerk of court received from Gewin a fictitious International Bill of Exchange in the amount of $2,500,000. The court issued an order to show cause why Gewin should not be held in contempt and ordered Gewin be brought to court for a hearing on September 5, 2007. Gewin appeared pro se at the hearing and advanced no legitimate defense regarding his failure to pay. The court held Gewin in civil contempt until he paid the required restitution and fíne. Gewin was already in prison serving his criminal sentence, and the court informed Gewin that time during which he was held in contempt would not count toward that sentence and would delay Gewin’s ultimate release date, which had originally been projected for March 28, 2012. Gewin did not appeal the district court’s contempt order.
In October 2007, Gewin wrote to the court asserting, for the first time, he was unable to pay his financial obligations to the court. Gewin stated he had spent his own assets on attorney’s fees and living expenses and that the court could not order him to turn over Ferguson’s funds. In December 2007, the court ordered the government to file a response to Gewin’s letter addressing, in particular, whether Gewin could be held in civil contempt for failing to pay an amount that exceeded the $651,541.82 the court had found Gewin able to pay at his sentencing hearing. In September 2008, after receiving the government’s response, the court clarified that Gewin was only being held in contempt until he paid $651,541.82, and the court acknowledged that inability to comply with a court order is a complete defense to a finding of civil contempt. Nevertheless, the court held Gewin had failed to establish the defense because his letter contained nothing but his own unsworn statement regarding his inability to make the required payment.
In July 2009, the government filed a notice reminding the district court of Gew-in’s continued civil contempt status. Gew-in responded by filing a petition for a writ of habeas corpus and by stating he did not need the court to appoint an attorney to represent him. The district court denied Gewin’s collateral attack as procedurally barred and without factual or legal merit. Gewin did not appeal from this April 2011 decision by the district court.
In May 2011, the district court scheduled another status conference on Gewin’s continued incarceration for civil contempt. The court appointed A.J. Kramer, the Federal Public Defender, as advisory counsel to Gewin. At a July 19, 2011 status conference, Mr. Kramer indicated he had offered to move to purge the contempt, but Gewin had declined. In response to questions from the district judge, Gewin reiterated this refusal on the record. Mr. Kramer told Gewin that if Gewin changed his mind, he could contact Mr. Kramer.
In February 2012, as Gewin’s original release date was approaching, Gewin filed several challenges to his civil contempt status. He acknowledged evidence of his inability to pay had been requested years earlier, apologized for taking so long to respond, and explained he was distracted over the years by efforts to vacate his conviction. Gewin insisted he had no con *77 trol over his wife’s accounts and provided no information about what had happened to these funds. With respect to accounts in his name, Gewin said he spent the funds on legal and personal expenses. He attached assorted bank statements displaying a widely fluctuating balance. He also attached receipts showing various payments for legal expenses, but provided no documentation about the source of those payments. On the contrary, there was some evidence his relatives paid those expenses from previously undisclosed bank accounts. Gewin was unrepresented before the district court throughout 2012.
On November 6, 2012, after the government responded to Gewin’s filings, the district court issued an order finding Gewin had failed to demonstrate his current inability to pay the amounts owed and continuing to hold him in contempt. On November 19, 2012, Gewin filed this appeal challenging the district court’s November 6, 2012 order.
While this appeal was pending, the government moved to terminate Gewin’s ongoing civil contempt status. The government stated it no longer thought continued contempt would induce Gewin to comply with the court’s orders. Accordingly, the district court terminated the contempt on October 24, 2013. The district court noted Gewin’s contempt had added six years to his term of incarceration.
In this appeal, Gewin alleges various errors in both the district court’s original 2007 contempt order and its more recent 2012 order continuing Gewin’s contempt status. Gewin asks this court to vacate his contempt status nunc pro tunc and order that the entire time he has spent incarcerated for civil contempt be counted toward the fulfillment of his underlying sentence.
II
We begin by clarifying the scope of our jurisdiction and the standard of review. This appeal, filed on November 19, 2012, arises from the district court’s November 6, 2012 order continuing to hold Gewin in civil contempt. Yet Gewin alleges certain errors arising from the district court’s show-cause hearing on September 5, 2007 and the court’s contempt finding of that date. Gewin failed to timely appeal the September 5, 2007 order, see 28 U.S.C. § 2107(b) (notice of appeal must be filed within 60 days after entry of order appealed from where the United States is a party), and we therefore lack jurisdiction to address alleged errors in the original contempt order, see Bowles v. Russell, 551 U.S. 205, 209-10, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007) (“[T]he taking of an appeal [in a civil case] within the prescribed time is mandatory and jurisdictional”). The fact that the 2012 order related to the same continuing contempt as the 2007 order does not give us jurisdiction to hear an untimely appeal from an earlier order, which was itself an appealable final order. Cf. In re Grand Jury Proceedings, 795 F.2d 226, 229-30 (1st Cir.1986) (holding a motion to purge contempt does not toll time for appeal of contempt order, nor can court hearing appeal of order denying a motion to purge review alleged errors in original contempt order); 15B Charles Alan Weiight et al, FedeRal Practioe and Procedure §§ 3916, 3917 n. 70 (2d ed. 1992 & Supp.2014) (“It is ... well settled that appeal from denial of a motion to vacate a judgment does not support review of the original judgment.”).
At oral argument, Gewin’s counsel suggested we have jurisdiction to review errors from the 2007 proceedings under equitable principles because Gewin’s failure to appeal in 2007 resulted from his lack of counsel in the contempt proceedings. But even if we were inclined to adopt such an equitable principle, we “ha[ve] no authority to create equitable *78 exceptions to jurisdictional requirements.” Bowles, 551 U.S. at 214, 127 S.Ct. 2360; see Carrascosa v. McGuire, 520 F.3d 249, 254 n. 9 (3d Cir.2008) (rejecting argument that previous counsel’s failure to file timely notice of appeal could be excused because that argument “seeks essentially equitable relief from the time limit on appeals,” which Bowles precludes). Gewin claims he is aided in this argument by Rodriquez v. United States, 395 U.S. 327, 331-32, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969), which held that where a criminal defendant fails to file a timely appeal because he was not informed at sentencing of his right to appeal or that the clerk would, on request, file a notice of appeal for him, the defendant is entitled to resentencing so he may perfect a timely appeal. However, no case establishes an analogous remedy for civil litigants. Indeed, the Rodriquez remedy is triggered when a district court fails to abide by Federal Rule of Criminal Procedure 32(j)(l), which requires a district court to advise a defendant of his right to appeal. See id. There is no such rule in civil cases. Furthermore, to the extent Rodriquez relied on equitable principles, we cannot transfer its reasoning to the civil context because the time limit for filing a civil appeal — as opposed to that for filing a criminal appeal — is jurisdictional. See United States v. Byfield, 522 F.3d 400, 403 n. 2 (D.C.Cir.2008).[1]
We have jurisdiction only to review errors arising from the November 2012 order from which Gewin appealed. Gewin may bring a challenge to the district court’s decision not to purge the contempt at that time, but he cannot challenge the district court’s original finding of contempt. Insofar as Gewin appeals the district court’s 2007 contempt order, we dismiss that portion of the appeal.
Even with regard to the alleged errors properly before this court, Gewin failed to raise many of his objections— and we note below which ones in particular — before the district court. “To preserve a claim of error on appeal, a party typically must raise the issue before the trial court. No procedural principle is more familiar than that a right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.” Salazar ex rel. Salazar v. District of Columbia, 602 F.3d 431, 436 (D.C.Cir.2010). Most of the arguments Gewin raises for the first time on appeal are forfeited. Therefore, Gewin will have to demonstrate error under a more onerous standard of review in order to obtain reversal.
“Generally, an argument not made in the trial court ... will not be considered absent exceptional circumstances.” Id. at 437. Exceptional circumstances include “cases involving uncertainty in the law; novel, important, and recurring questions of federal law; intervening change in the law; and extraordinary situations with the potential for miscarriages of justice.” Flynn v. Comm’r, 269 F.3d 1064, 1069 (D.C.Cir.2001). Some courts, importing a standard from the criminal context, see Fed. R.CRIM.P. 52(b), have indicated they will review unpreserved claims in civil cases for plain error. See Salazar, 602 F.3d at 437. A court reverses for plain error where the appellant demonstrates there is *79 (1) a legal error that (2) is plain at the time of appellate review, (3) affects substantial rights of the parties, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id.; see also United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). We have yet to determine whether the “exceptional circumstances” test and “plain error” review inquiries are coterminous. Salazar, 602 F.3d at 437. We need not decide this question now because, as we explain below, Gewin’s forfeited arguments demonstrate neither exceptional circumstances nor plain error.
Ill
Gewin argues the district court violated his Fifth Amendment right to due process by not offering to appoint counsel to represent him through the contempt proceedings. Gewin’s argument primarily focuses on his right to counsel at the original contempt hearing in 2007. However, as explained above, Gewin’s right-to-eoun-sel claim is before us only as it relates to the proceedings leading up to the November 2012 order. We offer no opinion on whether Gewin had a right to counsel at his original contempt hearing.
With regard to the 2012 proceedings, the government argues Gewin forfeited his due process claim by not raising it before the district court and, therefore, we should not review that claim absent exceptional circumstances. Gewin responds that the right to counsel is not subject to forfeiture, and that the right may be waived only by an intentional relinquishment. Whether Gewin’s claim was subject to forfeiture depends on whether the due process right to counsel is best analogized to other due process claims, which are subject to forfeiture, or to the right to counsel that emanates from other constitutional provisions, which generally cannot be forfeited. Compare, e.g., United States v. Barnes, 295 F.3d 1354, 1366-67 (D.C.Cir.2002) (reviewing for plain error a due process argument, not raised in district court, that defendant was not given notice his conduct constituted a crime), Norwest Bank Neb., N.A. v. W.R. Grace & Co., 960 F.2d 754, 756-57 (8th Cir.1992) (denying review of argument not made in district court that the application of the statute of limitations violated due process), and In re Grand Jury Proceedings, 875 F.2d 927, 931-32 (1st Cir.1989) (holding criminal contem-nor’s failure to argue before the district court that show cause order violated due process right to notice and opportunity to prepare a defense “deprived him of any right to raise these matters on appeal” absent plain error), with Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (requiring “intelligent waiver” of the Sixth Amendment right to counsel in criminal proceedings), and Miranda v. Arizona, 384 U.S. 436, 467-71, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (holding an individual’s failure to ask for a lawyer prior to interrogation does not constitute waiver of the right to counsel derived from the Fifth Amendment’s Self-Incrimination Clause). But see United States v. Thomas, 357 F.3d 357, 362-63 (3d Cir.2004) (noting a defendant may forfeit his Sixth Amendment right to counsel through “extremely serious misconduct”). We need not decide in this case whether a civil defendant’s claimed due process right to counsel is forfeited if not raised before the district court, however. Nor do we need to decide whether Gewin had a right to counsel under Turner v. Rogers, — U.S. -, 131 S.Ct. 2507, 180 L.Ed.2d 452 (2011), and Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), which establish the framework for determining whether due process requires a civil contemnor be afforded counsel in a particular case. Even assuming arguendo Gewin had a right to counsel that was not forfeited, the record in this case demon *80 strates Gewin intentionally waived any such right.
The district court made clear to Gewin as early as April 2007 that, in the event the government moved for a finding of civil contempt against Gewin, he could obtain his own attorney or the court would appoint one for him. Supp’l J.A. 262-68, 286-87. While the offer to appoint counsel was not reiterated at the September 2007 show cause hearing, the district judge did make clear to Gewin the consequences of his being found in contempt, specifying both at that hearing and in a subsequent order that Gewin would be incarcerated until he complied with the court’s payment orders and that the running of his criminal sentence would be suspended during that time.
Gewin’s own actions and statements confirm that Gewin was aware of a general right to counsel and of the court’s continuing ability and willingness to appoint counsel for him. Gewin had previously chosen to represent himself at trial. After an adverse jury decision, Gewin exercised his right by hiring counsel to represent him at sentencing and on appeal. And Gewin chose to challenge before this court his waiver of trial counsel, receiving from us a decision rejecting his claim and finding his waiver knowing and voluntary. See Gewin, 471 F.3d at 198-200. In July 2009, Gewin filed a habeas petition in which he informed the court of his dissatisfaction with his previous representation, declared that he was competent to handle his own affairs, and stated that “no ... attorneys need to be appointed” for him. Petition for Writ of Habeas Corpus, United States v. Gewin, No. 1:03-cr00366 (D.D.C. July 30, 2009), ECF No. 558. In response, the district court confirmed its continuing “in-clin[ation] to appoint counsel to represent Mr. Gewin and/or to consult with him regarding his own pro se representation if requested,” but accepted Gewin’s request that it not do so. Order of Nov. 19, 2009, United States v. Gewin, No. 1:03-cr-00366 (D.D.C.), ECF No. 563.
Moreover, in April 2011, the district court directed the Federal Public Defender’s Office to meet with Gewin, and the court subsequently appointed the Public Defender himself, A.J. Kramer, as advisory counsel to Gewin in connection with the July 2011 status conference on his contempt. Mr. Kramer consulted with Gewin. Although Gewin declined to allow Mr. Kramer to file anything on his behalf at that time, Gewin knew Mr. Kramer remained available if he ever changed his mind and desired such legal representation. Tr. of Status Hearing at 6, July 19, 2011, Supp’l J.A. 357. The court explained that it had appointed Mr. Kramer to make sure Gewin was aware of all possible grounds on which he could seek to purge the contempt, id. at 5, Supp’l J.A. 356, and Mr. Kramer promised to keep in touch with Gewin, id. at 12, Supp’l J.A. 363. In short, by 2012, the district court had informed Gewin fully and repeatedly of the availability of appointed counsel to represent or assist him in the contempt proceedings. Gewin was aware of the district court’s offer of counsel, and his actions demonstrate that he knowingly and intelligently declined to accept.
Given all of these facts and circumstances, Gewin’s decision to proceed pro se in his submissions to the court in 2012 are sufficient to constitute a waiver of any due process right to counsel he may have had in 2012. Cf. Buhl v. Cooksey, 233 F.3d 783, 789-90 (3d Cir.2000) (“Waiver of the right to counsel depends in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.”); United States v. Veltman, 9 F.3d 718, 721 & n. 5 (8th Cir.1993) (holding a prisoner’s due process right to indepen *81 dent assistance when threatened with involuntary commitment to a mental hospital is subject to lower standard of waiver than Sixth Amendment right to counsel in criminal proceedings); id. at 721 (“The right to counsel varies depending on the context in which it is invoked, as do the requisites for waiver.”).
We reiterate that our finding that Gewin waived his alleged right to counsel is not a decision that Gewin’s due process claim could not be lost by means short of waiver. Furthermore, our decision is not a holding that Gewin in fact had a due process right to counsel. Rather, we hold simply that even if Gewin’s due process claim was not forfeited, and even if Gewin had a right to counsel under the Due Process Clause, Gewin waived that right in the course of the district court proceedings. We will deny Gewin’s due process claim.
IV
Gewin argues the district court erred in the 2012 proceedings by refusing to reopen the court’s determination made at the 2005 sentencing hearing that Gewin had control over the bank accounts in his wife’s name or under her control. In his 2012 filings, Gewin argued he was unable to pay the fine and restitution because he did not have, and never had, control over his wife’s accounts. The district court rejected this argument by relying on its finding at sentencing.
Gewin’s argument implicates two distinct principles. The first is that present inability to comply is a complete defense to civil contempt. See United States v. Rylander, 460 U.S. 752, 757, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983). The second is that “a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy.” Maggio v. Zeitz, 333 U.S. 56, 69, 68 S.Ct. 401, 92 L.Ed. 476 (1948). One of the factual bases of the district court’s sentencing order was its finding that Ferguson’s accounts could be used to pay Gewin’s fine and restitution as of the time of sentencing. Gewin was not permitted to challenge this finding at the contempt proceedings. On the other hand, Gewin was permitted to argue in 2012 that he no longer had access to his wife’s accounts. See id. at 76, 68 S.Ct. 401. The district court was bound to allow Gewin to “give any evidence of present conditions or intervening events which corroborate him.” See id. For instance, if Gewin had presented evidence that between his 2005 sentencing and the 2012 contempt proceedings his wife had moved her assets to a different account to which Gewin had no access, the district court would be bound to consider whether Gewin still had access to his wife’s assets. Alternatively, if Gewin had presented evidence that he had attempted in good faith to access the funds at issue but had been denied access by the relevant banks because he was not an account holder, and had been denied assistance in accessing the funds by his wife, the district court would have been obligated to consider whether the facts found at sentencing were still true.
The district court correctly adhered to these principles. The court properly rejected Gewin’s attempt to show he never had access to his wife’s funds because such an argument was an attempt to reopen the factual basis for the 2005 sentencing. See Order of Nov. 6, 2012, at 6-7, United States v. Gewin, No. 1:03-cr-00366 (D.D.C.), ECF No. 602. The district court additionally recognized Gewin might be able to demonstrate current inability to access the funds but rejected any such argument on the merits. The court stated: “Gewin’s 2012 filings provide no additional factual content suggesting cause to revisit [the 2005] finding.” Id. at 7. The district *82 court did not err in this finding because Gewin’s 2012 filings were directed at attacking the court’s 2005 determination rather than demonstrating any changed circumstances. See Gewin Letter of Feb. 6, 2012, United States v. Gewin, No. 1:03-cr00366 (D.D.C.), ECF No. 581 (presenting no new facts and noting the relevant facts “have been before the court for 7 or 8 years”); Motion for Court’s Acknowledgement, United States v. Gewin, No. 1:03-cr-00366 (D.D.C. Mar. 5, 2012), ECF No. 583 (resting defense on fraud allegedly perpetrated by the government at the 2005 sentencing); Supplement # 1, United States v. Gewin, No. 1:03-cr-00366 (D.D.C. Mar. 15, 2012), ECF No. 585 (same). Gewin did not submit substantial evidence of a present inability to access his wife’s funds.[2]
V
In addition to the arguments already addressed, Gewin claims the district court made numerous other errors. Because these arguments are plainly meritless, we address them only briefly.
First, Gewin claims the district court erred by holding him in contempt without finding he had a present ability to pay. Whatever may be the case with regard to the district court’s 2007 order, it is clear that in 2012 the district court considered and rejected Gewin’s argument that he was unable to pay. The district court stated:
Regrettably, because Gewin has once again declined the opportunity to provide the documents and information that would seem most readily to support a present inability to pay the fine and restitution amounts due and owing, he has failed to provide a basis upon which this Court should reconsider its Civil Contempt Order.
Order of Nov. 6, 2012, at 11-12, United States v. Gewin, No. 1:03-cr-00366 (D.D.C.), ECF No. 602. Because the court explicitly found Gewin had failed to meet his burden of proof in asserting an inability-to-pay defense, Gewin’s claim that the court did not consider the defense at all must be rejected.
Second, Gewin claims the district court erred by holding him in civil contempt rather than acting under the provisions of 18 U.S.C. §§ 3613A and 3615. Although this alleged error would have been most properly raised in the context of *83 the 2007 proceedings, we broadly construe Gewin’s argument as challenging the power of the district court to continue Gewin’s contempt sanction in 2012. But even as it relates to the 2012 order, this argument is forfeited because Gewin failed to assert it before the district court. Gewin has demonstrated neither plain error nor exceptional circumstances warranting reversal. The court’s alleged failure to comply with the procedural dictates of § 3613A — even if error — was not prejudicial.[3] And nothing in § 3615, which provides that a defendant’s willful failure to pay a fíne is a misdemeanor punishable by fine or imprisonment for up to one year, suggests Congress meant the statute to preempt the courts’ common law civil contempt power. Indeed, other statutes suggest the opposite. See 18 U.S.C. § 3613A(a)(l) (“Upon a finding that the defendant is in default on a payment of a fine or restitution, the court may ... hold the defendant in contempt of court ... or take any other action necessary to obtain compliance with the order of a fine or restitution.”).
Third, Gewin argues the length of his confinement for civil contempt demonstrates that at some point the contempt lost its coercive effect and became punitive. Cf. Maggio, 333 U.S. at 76, 68 S.Ct. 401 (“It is everywhere admitted that even if he is committed, he will not be held in jail forever if he does not comply. His denial of possession is given credit after demonstration that a period in prison does not produce the goods.”). Because this claim was never presented to the district court, it is forfeited. Gewin has not met his burden of demonstrating his lengthy incarceration for contempt ever became punitive in nature. Indeed, he has identified no particular date as of which the incarceration became punitive, nor has he presented any evidence that would allow us to determine such a date. There is no evidence the contempt sanction had become punitive as of the district court’s November 2012 order. On the contrary, it seems Gewin took no serious efforts to contest his contempt status until 2012, as his original release date was approaching. Indeed, Gewin admitted as much, conceding in a March 21, 2012 fifing that he “probably did not handle this contempt issue properly,” having “basically ignored it (except for [his] October 30, 2007 letter) over the years.” Supplement #2, at 9, United States v. Gewin, No. 1:03-cr-00366 (D.D.C. Mar. 21, 2012), ECF No. 586. This suggests it was only in 2012 — when it seems that, after numerous warnings by the district court that his criminal sentence had been suspended, Gewin actually began to feel the reality of his contempt status— that the contempt sanction had the most coercive force. Gewin has shown neither plain error nor exceptional circumstances warranting reversal.
Finally, Gewin asks this case be reassigned to a different district judge for further proceedings that may arise during the court’s supervision of his sentence. Although Gewin argues the “long and torturous history” of the case has “engendered some personal animus on the part of the trial court,” Appellant’s Br. 45, he *84 points to no evidence of such animus. The protracted nature of the proceedings below does not justify reassignment of this case. See Liteky v. United States, 510 U.S. 540, 551, 555-56, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). We will deny Gewin’s request for reassignment.
For the foregoing reasons, Gewin’s appeal is dismissed insofar as he challenges the district court’s 2007 contempt order. Gewin’s challenges to the November 2012 order are denied, and the order of the district court is

Affirmed.

. Gewin also suggested in rebuttal at oral argument that the 2007 order is reviewable because it is “inextricably bound up with” the 2012 order from which Gewin properly appealed. See Salazar ex rel. Salazar v. District of Columbia, 602 F.3d 431, 434, 436 (D.C.Cir.2010). But Gewin forfeited any such argument by failing to make it in his briefs or even in his opening remarks at oral argument. See Ark Las Vegas Rest. Corp. v. NLRB, 334 F.3d 99, 108 n. 4 (D.C.Cir.2003).

. Neither party has addressed whether this alleged error affected the outcome of the district court proceedings, and thus whether reversal would be warranted even if Gewin were able to demonstrate error. See Fed. R.Civ.P. 61 (“Unless justice requires otherwise, no error ... is ground for ... vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party’s substantial rights.”); Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc., 493 F.3d 160, 168 (D.C.Cir.2007). Since the district court also held Gewin had not shown he lacked present access to the funds that had been held in his own name as of the time of sentencing, see Sentencing Tr. at 104, Apr. 1, 2005, Supp'l J.A. 238, it is doubtful that simply prevailing on the issue of whether Gewin had access to Ferguson's funds in 2012 would have been sufficient to establish Gewin’s inability to comply, at least partially, with the fine and restitution order.
Gewin does not argue on appeal that the district court erred in holding he had not met his burden in demonstrating he had dissipated his own funds by 2012. Indeed, Gewin is caught in a Catch-22 in this regard. If Gew-in had been able to convince the district court he had spent his funds — and that he did not have access to Ferguson's accounts — he would have successfully made out a defense to civil contempt. But he also would have exposed himself to a charge of criminal contempt for willfully dissipating his funds in contravention of a court order. A criminal contempt conviction would likely have carried its own term of incarceration.

. 18 U.S.C. § 3613A requires that a court, in determining what action to take when a defendant is in default on payment of a fíne or restitution, "consider the defendant's employment status, earning ability, financial resources, the willfulness in failing to comply with the fine or restitution order, and any other circumstances that may have a bearing on the defendant’s ability or failure to comply with the order of a fine or restitution.” 18 U.S.C. § 3613A(a)(2). The statute also states that, "[t]o the extent practicable,” in a hearing held to address a defendant's default, the prisoner should participate via telephone or video conference without being removed from the prison in which he is confined. Id. § 3613A(b)(2).