# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 24-5073

September Term, 2024

FILED ON: JULY 22, 2025

EBONY WILSON,

APPELLANT

v.

COMMISSIONER OF SOCIAL SECURITY,

APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cv-00604)

Before: MILLETT, WILKINS, and CHILDS, *Circuit Judges*

## J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs of the parties. The Court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* FED. R. APP. P. 36; D.C. CIR. R. 36(d). For the reasons stated below, it is:

**ORDERED** and **ADJUDGED** that the order of the district court issued on February 1, 2024, entering judgment in favor of appellee be **AFFIRMED**.

\* \* \*

Ebony Wilson appeals the denial of her application for disability benefits under Titles II and XVI of the Social Security Act. *See* 42 U.S.C. § 401 *et seq.* (Title II); 42 U.S.C. § 1381 *et seq.* (Title XVI); *see generally* 42 U.S.C. § 405(g). Ms. Wilson raises on appeal two challenges to that denial. First, she argues that the administrative law judge ("ALJ") who decided her case erroneously failed to consider her pain when assessing her disability. Second, Ms. Wilson contends that the ALJ's failure to consider her pain in the relevant portions of his analysis was not harmless error. Having carefully reviewed the record, this court agrees with the district court that Ms. Wilson has not demonstrated reversible error in the ALJ's decisionmaking.

1

Accordingly, we affirm the judgment of the district court sustaining the Social Security Administration's denial of benefits.

**I**

**A**

As relevant to this case, an individual can qualify for both disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, respectively, if they are disabled. 42 U.S.C. §§ 423, 1381a. The term "disabled" is defined as being unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." *Id.* § 1382c(a)(3)(A); *see also id.* § 423(d)(1)(A) (providing a parallel definition for the term "disability" in Title II). An individual qualifies as disabled (1) if she suffers from a medical condition that meets or equals an impairment "list[ed]" by the Administration as disabling, 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d), or (2) if her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Broadly speaking, the administrative review process for determining eligibility for benefits consists of five steps. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Saunders v. Kijakazi*, 6 F.4th 1, 3 (D.C. Cir. 2021); *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004). At step one, the claimant must show that she is not engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *see Butler*, 353 F.3d at 997. At step two, the claimant must show that she suffers from a "medically determinable" impairment that is "severe" and has lasted for at least twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 404.1509, 416.920(a)(4)(ii), 416.920(c), 416.909; *see* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). At step three, the ALJ evaluates whether the claimant's impairment meets or equals an automatically-qualifying impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). If a claimant clears these three steps, she will be found to be disabled and eligible for benefits without further inquiry. *Butler*, 353 F.3d at 997.

If she does not clear the first three steps, the ALJ proceeds to step four. At the outset of this inquiry, the ALJ determines the claimant's "residual functional capacity," which is "the most [work]" the applicant "can still do despite [her] limitations." 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(1), 416.920(a)(4)(iv), 416.945(a)(1); *see also id.* §§ 404.1520(e), 416.920(e). In making this finding, the ALJ must consider all of the claimant's impairments, whether or not they are severe. *Id.* §§ 404.1545(a)(2), 416.945(a)(2).

The claimant then must demonstrate that, given her residual functional capacity, she is no longer capable of performing work in which she previously engaged. 20 C.F.R.

2

§§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant makes that showing, the Commissioner goes on to step five to determine whether the claimant can perform any other work or is disabled. *Id*. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g); *see Butler*, 353 F.3d at 997.

**B**

**1**

Ebony Wilson has a long record of medical complications. Ms. Wilson submitted her two most recent applications for disability insurance benefits and supplemental security income in August 2019 and January 2020, respectively. J.A. 225–236. Her applications focused on medical conditions that began in October 2018. J.A. 225. At that time, Ms. Wilson's physical conditions ranged from chest and joint pain, to enlarged lymph nodes, dysphagia, lymphadenopathy, and hypomania. J.A. 71–72, 88, 403–404. In addition, Ms. Wilson's medical records reflect various reports of pain generally. J.A. 71–72, 403, 418, 662, 655. But by November 2018, Ms. Wilson reported to her doctors that her pain "[wa]s under control." J.A. 662.

In mid-2019, Ms. Wilson again reported widespread pain, diffuse joint pain, "worsening joint pain," and "severe pain everywhere." J.A. 564, 571, 576, 581, 592, 757, 772, 784. During numerous medical visits, doctors found that Ms. Wilson had "normal muscle strength," "normal gait," and "no acute distress." J.A. 786.

Then, from August 2020 through December 2020, Ms. Wilson reported to her doctors that her pain was nonexistent, had "improved slightly," or had improved with no new "exacerbations of pain." J.A. 901, 917. Nevertheless, Ms. Wilson's complaints of pain recurred in January 2021 when she reported "chronic pain, fatigue, [and] migraines" that she described as "constant in nature[.]" J.A. 885, 888.

**2**

In her applications for both disability insurance and supplemental security income benefits, Ms. Wilson relied on that same history of medical problems.

Disability examiners denied Ms. Wilson's initial applications for benefits and her subsequent applications for reconsideration on the ground that she had not demonstrated a qualifying disability. Ms. Wilson then requested a hearing before an ALJ, which occurred in April 2021. Two weeks later, the ALJ found that Ms. Wilson's impairments did not meet or "medically equal[]" the severity of one of the listed impairments under the Act. ALJ Decision at 5. Turning to step four, the ALJ reviewed reports from Ms. Wilson's doctors and two state medical consultants and then concluded that the medical evidence did not support the "extent of symptoms as alleged by the claimant." *Id.* at 7, 9–10. Ultimately, the ALJ found that Ms. Wilson's residual functional capacity included the ability "to perform light work" as she had in

3

the past.  *Id.* at 6, 9, 11.   The ALJ accordingly ruled that Ms. Wilson was not entitled to disability benefits under either Titles II or XVI.   The Social Security Administration denied Ms. Wilson's administrative appeal.

Ms. Wilson then filed a lawsuit in the United States District Court for the District of Columbia seeking to overturn the Social Security Administration's decision.   A Magistrate Judge issued a Report and Recommendation finding that the Administration erred at step two by failing to address Ms. Wilson's chronic pain and pain-related diagnoses as a *possible* medically determinable impairment.   The Magistrate Judge nonetheless recommended affirming the Administration's decision as harmless since the ALJ had appropriately considered Ms. Wilson's pain at subsequent steps in the process such that the initial error did not affect the ultimate finding of no disability.   The district court adopted the Magistrate Judge's Report and Recommendation and issued final judgment in favor of the Administration.

Ms. Wilson filed a timely notice of appeal.   This court has jurisdiction under 28 U.S.C. § 1291.

## II

We must uphold the Administration's denial of benefits if it is "based on substantial evidence in the record and correctly appl[ies] the relevant legal standards."   *Saunders*, 6 F.4th at 4 (quoting *Butler*, 353 F.3d at 999) (internal quotation marks omitted); *see* 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance; it is evidence that "a reasonable mind might accept as adequate to support a conclusion."   *Butler*, 353 F.3d at 999 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted).   Only a prejudicial error that affected the outcome of the proceeding will support reversal.   *Saunders*, 6 F.4th at 4.

## A

We agree with Ms. Wilson that the ALJ committed legal error at step two by failing to consider her pain as part of the analysis.   *See Saunders*, 6 F.4th at 3 (citing 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 404.1509).   That error, however, does not require reversal because, on the record before us, the ALJ's omission did not prejudice his ultimate conclusion that she does not suffer from a qualifying disability.   *See id.* at 4.[1]

First, even if the ALJ had factored Ms. Wilson's pain into the analysis, that would not have affected the conclusion that Ms. Wilson was not disabled in the initial three-step stage of analysis. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)–(iii), 404.1520(c), 404.1509, 416.920(a)(4)(i)–(iii),

---

[1]   Most other circuits that have addressed the question have applied the harmless-error rule to step-two errors.  *See, e.g.*, *Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008); *Burgin v. Commissioner of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013); *Orr v. Commissioner Soc. Sec.*, 805 F. App'x 85, 88 (3d Cir. 2020); *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).  *But see Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007) (holding that erroneously finding an impairment to be non-severe is not harmless error, even where the applicant prevailed at step two based on other impairments).

416.920(c), 416.909. To qualify as "severe" at step two, an impairment must "significantly limit[]" the applicant's "physical or mental ability to do basic work activities." *Id.* §§ 404.1520(c), 416.920(c); *Butler*, 353 F.3d at 997. While Ms. Wilson sometimes refers to her pain as having felt "severe," she has not argued here or before the district court, that her pain rose to the level of severity required by the regulations.

Nor does Ms. Wilson argue that her pain independently qualified as a listed medically determinable impairment that would have automatically qualified her as disabled at step three. As a result, Ms. Wilson has not shown that the ALJ's error affected the determination that she did not qualify for benefits at the initial three-step stage of the disability analysis.

Second, the ALJ expressly considered Ms. Wilson's pain in determining that she was not disabled at step four and could continue to perform her past relevant work as a teacher's aide, retail clerk, retail supervisor, childcare teacher, or assistant manager. ALJ Decision at 6–11. At step four, when the ALJ evaluated Ms. Wilson's residual functional capacity, he expressly "considered all symptoms[,]" including "claimant's pain." *Id.* at 6. He credited her allegations of "extreme fatigue [and] joint pain," *id.*, and her testimony describing "significant joint pain" that left her "unable to sit, stand, or walk for extended periods[,]" *id.* at 7. The ALJ then relied on that (and other) evidence in finding that Ms. Wilson's "medically determinable impairments"—that is, her thyroid disorder, hernia, and obesity—"could reasonably be expected to cause the alleged symptoms[,]" including her pain. *Id.* Yet the ALJ also found that Ms. Wilson's statements concerning the "intensity, persistence, and limiting effects" of her symptoms, including pain, were inconsistent with the medical evidence. *Id.* Ms. Wilson has not shown that the ALJ's finding of inconsistency lacked substantial support in the record.

The ALJ further found that, while Ms. Wilson complained of "fatigue and diffuse pain," the evidence did not show that these symptoms, including pain, were "debilitating." ALJ Decision at 7. The ALJ found that, according to Ms. Wilson's medical records, "her pain was under control * * * [and] she was noted to be 'otherwise healthy' with a lack of symptoms" in November 2018. *Id.* As for Ms. Wilson's January 2020 complaint of "pain all over her body," her medical records reported that there was "no acute distress" and that she was otherwise in "normal" condition. *Id.* at 8. The ALJ again noted that, in October 2020, Ms. Wilson complained of "diffuse pain," but that her physical examination was normal. *Id.*

Nonetheless, the ALJ credited Ms. Wilson's "complaints of pain and fatigue" and, on that basis, concluded that there were "some limitations to her residual functional capacity." ALJ Decision at 9. The ALJ then concluded that, "providing the claimant the upmost benefit of the doubt that can be reasonabl[y] supported by the medical evidence," Ms. Wilson "is limited to only light work" accompanied by "postural limitations[.]" *Id.* Based on those findings, the ALJ found that Ms. Wilson could still perform her prior work as a teacher aide, retail clerk, retail supervisor, childcare teacher, or assistant manager, and so concluded at step four that she is not disabled. *Id.* at 11.

5

Given all of that, the record does not show that the ALJ's error at step two affected the outcome under that prong or any subsequent step of the disability analysis. In fact, the ALJ ultimately considered Ms. Wilson's pain in the ensuing steps of his analysis and factored that pain into his finding that her residual functional capacity permitted her to undertake only the types of light work in which she had previously engaged.

At bottom, Ms. Wilson objects to the amount of weight the ALJ attached to her complaints of pain. But that is a question about the degree to which her pain impacts her ability to work, a factual finding that we review only for substantial supporting evidence. *Saunders*, 6 F.4th at 4; 42 U.S.C. § 405(g). Because the ALJ reasonably grounded his finding in the medical evidence showing that her pain was not debilitating and that she retained the ability to perform jobs she had previously held, the record provides no basis for overturning the ALJ's decision. Especially because the ALJ provided Ms. Wilson the benefit of the doubt in finding that she could only be expected to perform the types of light work that she had performed before. For those reasons, Ms. Wilson has not demonstrated that the ALJ's step-two error prejudiced the ultimate disability determination.

**B**

Ms. Wilson also argues that the ALJ's failure to consider her pain was prejudicial because that error led the ALJ to discount the medical opinions of two of her doctors, Dr. Mbuyi and Dr. Dominguez, who both discussed her pain. Wilson Opening Br. 27. That argument does not succeed.

To start, Ms. Wilson forfeited her argument as it pertains to Dr. Mbuyi because she failed to raise this argument before the district court. *See* J.A. 981 (district court noting that Ms. Wilson asserted only two arguments in her Objections: "the ALJ's error in not considering her chronic pain as a medically determinable impairment at step two," and "the ALJ committed prejudicial error in discrediting Dr. Dominguez's opinions"); *see also Salazar ex rel. Salazar v. District of Columbia*, 602 F.3d 431, 437 (D.C. Cir. 2010) ("[A]n argument not made in the trial court is forfeited and will not be considered absent exceptional circumstances.") (formatting modified).

As for Dr. Dominguez, Ms. Wilson does not demonstrate how the ALJ's failure to consider her pain at step two influenced or affected his consideration of Dr. Dominguez's expert opinion. The record, in fact, forecloses any such argument. The ALJ expressly acknowledged and addressed Dr. Dominguez's medical opinion and found independent reasons for discrediting it. ALJ Decision at 10.

Ms. Wilson instead argues that courts should *presume* that the ALJ's failure to consider pain at step two must have tainted the ALJ's consideration of Dr. Dominguez's medical opinion regardless of what the record shows. But she does not point to any authority for that presumption, and this court is not aware of any. Nor has she identified a legal rationale for adopting such an across-the-board presumption on a matter that is fundamentally a record-specific, factual

6

determination.  In short, that the ALJ did not discuss her pain at step two does not mean that the court should discount the ALJ's substantial engagement with Dr. Dominguez's expert opinion.

Ms. Wilson also points to Dr. Dominguez's findings that her pain was chronic and debilitating.  Wilson Opening Br. 20–21.  But Ms. Wilson has not identified any basis for this court to take the uncommon step of overturning an ALJ's factual finding that is substantially grounded in record evidence.  In particular, the ALJ found that Dr. Dominguez's analysis of Ms. Wilson's disability was "not consistent with or supported by the objective medical evidence," such as medical records showing that Ms. Wilson's physical examinations had "been generally unremarkable, with few restrictions noted to her musculoskeletal, respiratory, cardiovascular, or digestive systems[,]" and that Ms. Wilson's records often reflected "no distress with normal gait and strength" or other relevant capabilities.  ALJ Decision at 10.

In pressing a challenge to the ALJ's factual findings, Ms. Wilson's burden is to show that no "reasonable mind" could have reached the conclusion that the ALJ did.  *Butler*, 353 F.3d at 999 (citation omitted).  Her arguments fall well short of that mark.

\* \* \* \* \*

For the foregoing reasons, we affirm the judgment of the district court.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published.  The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc.  *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41.

### Per Curiam

FOR THE COURT:
Clifton B. Cislak, Clerk

BY:   /s/
Daniel J. Reidy
Deputy Clerk